## ROCKAFELLOW vs. PEAY, ET AL.

1.  CONSIDERATION. *What sufficient to support contract.*
    It is not necessary for the support of a note or mortgage that the maker derives any benefit to himself. It is sufficient if a valuable consideration move from the payee or mortgagee to a third party.

2.   HOMESTEAD :   *Equitable title sufficient to exempt.*
A homestead held by equitable title is as exempt from execution as if held by legal title.

3.   DOWER :   *Value of the whole allotted in part of the lands.*
When the value of a widow's dower in all of her husband's lots is set apart to her in part of them, she has no claim for dower out the remainder.

APPEAL from *Pulaski* Chancery Court.

HON. D. W. CARROLL, Chancellor.

*U. M. & G. B. Rose* for Appellant.

We submit that the Chancellor was wrong. John C. Peay tried to create an estate in himself by his unaided oath. He had not a scrap of paper or the testimony of any witness to corroborate his recollection of what he supposed to have happened many years ago. Under the old law his testimony would not have been admitted; under the present law his interest affects his credibility. His testimony is not only not sustained by anything in the record, but it is plainly contradicted.

1.   By his own testimony, his two depositions and his answer being contradictory.

2.   By the records of the county, which do not show that Bertrand was ever attorney in fact either for Graham or for Mary W. Lebaron.

3.   By the records of the Probate Court, which show that the lots were always taken as a part of the estate of Gordon N. Peay.

4.   By the testimony of Rockafellow, who testifies to statements denied by Peay as to the facts attending the borrowing of the money and the making of the mortgages.

5.   By John C. Peay's own letters, which are flatly in contradiction of his answer. These are not denied.

6.   By the plainest conclusions of common sense. Under the Constitution of 1868 a mortgage of the homestead was

void. Can any one suppose that Rockafellow would have lent the money on a void and worthless security? There is nothing to explain such conduct on his part, and the supposition that he acted in this manner would involve a manifest absurdity.

It would be going a good way to say that a man might establish title to land in himself by transactions *in pais,* and in parol, relating to matters long past, without any farther evidence. That would be to place titles at the mercy of all the infirmities of human memory; but when the testimony which seeks to do this is self-contradictory, is contradicted by everything in the case, and is unreasonable in itself, it certainly cannot be done.

Besides there was no kind of consistency between the title set up in the answer and that relied on in the hearing. This should have cut off the defence thus made. The chain of title set up in the answer was different from that which the defendant now is compelled to rely upon. Therefore the decision should have been the other way. *Byers v. Fowler,* 12 *Ark.,* 288. But the testimony of Peay broke down completely, and therefore it should have been disregarded. *The Santissima Trinidad,* 7 *Wheat.,* 338-339.

*Henderson & Caruth* for Appellees.

The claim of J. C. Peay to homestead on lot 7, in block 100, is good. *Const.* 1868; 32 *Ark.,* 227; 27 *Ib.,* 657; 31 *Ib.,* 15.

A homestead may be claimed out of an equitable estate. 41 *Vt.,* 398; 46 *Ib.,* 485; 66 *Ill.,* 164.

The mortgage was not acknowledged by Mrs. Peay. It does not bind her. 35 *Ark.,* 61; 32 *Ib.,* 458; 20 *Ib.,* 190.

The mortgage is not binding on the heirs of Gordon N. Peay because it was executed without consideration, and without the existence of any liability between him and Rockafellow.

SMITH, J. In 1871 John C. Peay borrowed of Rockafellow $4,000, for which he made his promissory note, payable at twelve months with interest at the rate of one and a half per cent. per month. In order to secure payment of this note, his brother, Gordon N. Peay, since deceased, executed a mortgage, which was acknowledged and recorded, upon lots 7, 8 and 9, in block 100, city of Little Rock. The wife of the mortgagor signed the instrument; but her name is not mentioned in the body of it, nor does the certificate of acknowledgment show any renunciation of dower.

In 1874 Gordon N. Peay, in consideration of an extension of time, made his note for the interest due on the original debt and to secure this new debt he and his wife executed and acknowledged another mortgage, conveying lot 12, in the same block; the wife joining for the purpose of relinqushing dower.

No part of either debt having been paid, Rockafellow filed his bill for foreclosure against John C. Peay, the widow, administratrix and heirs of Gordon N. Peay and others.

John C. Peay's defences were that the note was barred by the Statute of Limitations of five years, and that at the date of the first mortgage he was the equitable owner and in actual possession of lots 7, 8 and 9, he having before that time agreed with Gordon N. to exchange other city property for them, though he had never received his deed; that he had held exclusive and adverse possession of them for more than seven years; and moreover, that these lots constituted his homestead, he then being a married man and the head of a family.

The widow of Gordon N. Peay, who was also the administratix of his estate and the guardian of his children, pleaded that the note made by her husband and the two mortgages were executed without consideration.

The Chancellor decreed in favor of the plaintiff, save as to

lot 7, which he gave to John C. Peay as a homestead. The plaintiff and the defendants, John C. Peay and Susan C. Peay, the latter both in her individual and representative capacities, have appealed.

The testimony satisfies us of the following facts: that the legal title to lots 7, 8 and 9 was, at the date of the execution of the mortgage and had been ever since the year 1854 in Gordon N. Peay, but that he had made an agreement with his brother, John C., to exchange them for lots 4, 5 and 6 in the same block; that in pursuance of said agreement Gordon received a conveyance of the lots last named from the former owner, under whom John C. held by virtue of an executory contract to purchase, and placed John C. in possession of lots 7, 8 and 9; that John C. established his residence on lot 7 as early as 1853 or 1854, and has with his family resided there ever since with the exception of two intervals, namely, from 1856 to 1860, and from 1863 to 1869; and that John C. Peay was living on said lot at the time of the loan and mortgage and this was known to Rockafellow, who was probably misled by the circumstance that Gordon N. held the legal litle.

The remedy against John C. Peay personally is not barred by lapse of time since he has within five years next before the commencement of this suit promised in writing to pay the debt.

It was not necessary to the validity of Gordon N. Peay's note and mortgage that he should have derived any benefit from the transactions out of which they arose. It is sufficient that a valuable consideration moved from the plaintiff to his brother. The consideration for the execution of the first mortgage was a loan of $4,000 to John C. Peay. And the consideration for the making of the note and second mortgage was a forbearance to press the original security. The debt created by the loan was not his at first. Never-

1. CONSIDERATION: What sufficient to support a contract.

theless. he could pledge his property for its payment. The interest which had accrued upon the money lent was only an incident to the debt. But this he has assumed and made his own by his written undertaking. But, according to the view we have taken, Gordon N. was a mere trustee for his brother as to lots 7, 8 and 9, holding the dry legal title. His mortgage of them by his brother's procurement and directions was the same in legal effect as if he had conveyed to his. brother, as he could have been compelled to do, and his brother had then mortgaged them to Rockafellow. To assert a claim of homestead, it was not indispensable that John C. Peay should have been invested with the legal title to the premises. An equitable estate was enough. Indeed, it is probable that the homestead exemption withdraws from the demands of creditors whatever interest the claimant has in the property dedicated to that use. *Thompson on Homesteads and Exemptions, Secs.* 165, 170–3. *Bartholomew v. West,* 2 *Dillon,* 293.

John C. Peay could not encumber his homestead to secure repayment of a loan. *Constitution of* 1868, *Art. XII, Sec.* 2; *Sims v. Thompson,* 39 *Ark.,* 301.

But there is no proof that lots 8 and 9 were ever used for any purpose connected with the family residence so as to impress upon them the homestead character, although they lay adjacent to lot 7. There were no buildings upon them and they were at one time leased out for a nursery.

Mrs. Peay has no dower in any of the lots. She has released her dower in lot 12 according to the solemnities prescribed by law. And the value of the remaining lots was estimated in setting out to her her third in all of the lands of her deceased husband.

The result is that the decree of the Chancellor must in all things be affirmed.