### FIRST NAT. BANK OF CHANDLER v. CLEVELAND et al.

No. 15764. Opinion Filed July 5, 1927.

Rehearing Denied Oct. 25, 1927.

(Syllabus.)

**1. Guaranty—Ambiguous Instrument Construed Most Strongly Against Guarantor.**

In construing the language of an instrument of guaranty for the purpose of interpreting the same to determine the intention of the parties, when it appears that same is ambiguous and reasonably susceptible of the interpretation upon which the party parting with his property relied, it should be taken most strongly against the guarantor and in favor of the party thus parting with his property upon the faith of the interpretation of said instrument most favorable to his rights.

**2. Same.**

Record examined, and contract of guaranty herein relied upon found to be ambiguous, and same is held to be easily susceptible of the interpretation for which plaintiff contends and upon which it relied in parting with its money.

Error from District Court, Lincoln County: Wm. H. Zwick, Assigned Judge.

Action by A. S. Cleveland and another, surviving partners of the firm of Wm. D.

Cleveland & Sons, against the First National Bank of Chandler. Judgment for plaintiffs, and defendant brings error. Affirmed.

Ames, Lowe, Richardson & Cochran, for plaintiff in error.

Elmer L. Fulton, for defendants in error.

HUNT, J. This is an appeal from the district court of Lincoln county. The parties will be referred to here as they appeared in the court below; the defendants in error as plaintiffs and plaintiff in error as defendant. The action originated in the district court of Lincoln county on November 9, 1915, and has twice before found its way to this court; the first appeal being by plaintiffs from an order sustaining the objection of defendant to the introduction of any evidence and a judgment dismissing the action against it. In an opinion by Commissioner Hooker filed July 30, 1918 (73 Okla. 277, 175 Pac. 927), this judgment was reversed and cause remanded for a new trial. On the second trial the court refused to follow the law as announced in the opinion above referred to and sustained a demurrer to the evidence of the plaintiffs, and plaintiffs lodged their second appeal in this court. On May 9, 1922, in an opinion by Justice Johnson, the cause was reversed and remanded, with directions to render judgment in favor of plaintiffs for the amount sued for. This opinion was later withdrawn and on July 17, 1923, another opinion by Justice Johnson, modifying his former opinion to the extent of eliminating that portion directing that judgment be entered, and the cause reversed and remanded for a new trial, was filed (95 Okla. 22, 222 Pac. 1008). This trial resulted in judgment for plaintiffs upon motion for judgment on the pleadings and the evidence, from which the defendant prosecutes this appeal.

The petition in error contains 17 assignments of error. Counsel for defendant admit in their brief that most of them are included in two propositions. It is their contention that the court committed error in refusing to submit the question as to the trade meaning of the word "overdraft" to the jury and in sustaining the motion of plaintiffs for judgment on the pleadings and the evidence, and the defendant proceeds to argue only as to whether a custom existed on the Houston market relative to the use and meaning of the word "overdraft," and whether or not the contract of the bank was ultra vires, or, if ultra vires, had it performed its obligations. Plaintiffs contend that the law of this case was settled in

the two former opinions of this court hereinbefore referred to, and that the trial court so held and followed the same.

The undisputed facts in this case are set out at length in the former opinions herein found in Cleveland v. Mascho, 73 Okla. 277, 175 Pac. 927, and Id., 95 Okla. 22, 222 Pac. 1008, which by reference are made a part hereof, and are therefore not more fully set out herein. We desire, though, to incorporate herein the findings of fact and conclusions of law upon which the judgment of the trial court in the instant case was based; the same being as follows:

"In this case William D. Cleveland & Sons, a copartnership, substantially allege in their petition that they are cotton brokers doing business in Houston, Texas, and that in the month of March, 1914, the defendant A. E. Mascho advised the plaintiffs by letter that he had 132 bales of cotton of a certain quality for sale and asking for advice as to the terms upon which plaintiffs could sell said cotton for his account. Negotiations were finally consummated whereby the defendant Mascho shipped said cotton to the plaintiffs under an agreement whereby plaintiffs were to advance to Mascho the sum of $40 per bale, providing the cotton was of certain quality and quantity. The plaintiffs, not having theretofore represented the defendant Mascho as a cotton broker, required him to procure the guaranty of a local bank in Chandler to protect plaintiffs against certain overdrafts. Pursuant to this suggestion of the plaintiffs the defendant Mascho procured the First National Bank of Chandler, Okla., to wire the plaintiffs as follows: 'If Mascho overdrafts we will pay draft for the amount.' This wire of the defendant bank was received by the plaintiffs prior to their honoring the draft drawn by Mascho on them for the sum of $5,280, which sum represented the advance of $40 a bale on the shipment of cotton made by Mascho to them. On the former trial between these plaintiffs and these defendants the plaintiffs recovered a judgment against the defendant Mascho for $1,316. 83, bearing interest at the rate of six per cent. from the 16th day of September, 1916. In said former trial the defendant the First National Bank of Chandler interposed a demurrer to the evidence of the plaintiffs, which demurrer was sustained by the court. The judgment against the defendant Mascho has not been satisfied and it is the contention of the plaintiffs that the defendant bank, having guaranteed to save the plaintiffs harmless as against overdrafts of the defendant Mascho, that they as such sureties are liable for the amount of plaintiffs' judgment against Mascho. In the former trial of this case there was an issue of fact presented to the jury as to whether or not the cotton shipped by Mascho to the plaintiffs conformed to the specifications of quality as represented by Mascho in his correspondence to the plaintiffs. Another issue arising in the former trial was whether or not the plaintiffs could properly submit proof as to the technical meaning of the word 'overdraft' as the same was used in the telegram and letters between the plaintiffs and the respective defendants, it being contended by the plaintiffs that said term upon the cotton market in Houston, Texas, had, by general usage and custom of the cotton trade, the meaning that the defendant bank would be liable to the plaintiffs for any loss or detriment suffered by it when the cotton was ultimately sold by plaintiffs for Mascho's account. The lower court denied the plaintiffs the right to prove such usage and custom. The Supreme Court held that the lower court was in error in excluding such evidence from the consideration of the jury. It was further contended by the defendant bank in the former trial that even if the bank had entered into the contract of guaranty referred to, that said contract as to the bank was ultra vires and therefore void, and being void, would defeat plaintiffs' right of recovery. The petition of the plaintiffs in the instant case as well as in the former trial of this case predicated its right of recovery as against the defendant bank on the allegation that notwithstanding the contract of guaranty to be one ultra vires to the bank, that the bank having received the benefits of the contract, the plaintiffs should recover as against the bank on the theory of a cause of action for money had and received. The Supreme Court in this case has held that the plaintiffs have stated a cause of action as against the bank on this latter theory. The defendant bank defends upon the present case upon two grounds: First, a general denial; and second, that the alleged contract referred to by the plaintiffs was ultra vires and therefore not binding on the bank.

"1. The court finds as a matter of law that by reason of the judgment heretofore rendered in favor of the plaintiffs against the defendant Mascho for the sum of $1,-316 83 with interest at six per cent. from September 16, 1916, is a final adjudication of the liability of the defendant Mascho to the plaintiffs.

"2. The court further finds that the First National Bank of Chandler, Okla., was a party defendant in said former trial, having filed a demurrer to the petition of plaintiffs and also an answer thereto, and therefore that the adjudication of the liability of the defendant Mascho to the plaintiffs is equally binding in law against the defendant bank.

"3. The court further finds that the plea of the defendant bank that its contract of guaranty with the plaintiffs is ultra vires is well taken, but in this connection finds that the defendant bank, having received the benefit of the $5,280 draft drawn by the defendant Mascho against these plaintiffs.

which sum they have retained for their own use and benefit, that the plaintiffs are entitled as a matter of law to recover of and from the First National Bank of Chandler the sum of $1,316.83, together with interest thereon at the rate of 6 per cent. per annum from the 16th day of September, 1916, for which sum let execution issue.

"4. The court further finds that the motion of the plaintiff for an instructed verdict against the First National Bank of Chandler, Okla., for $1,316.83 with six per cent. interest from 16th day of September, 1916, should be and the same is hereby sustained.

"To all of which findings of fact and conclusions of law the defendant, the First National Bank of Chandler, Okla., is given an execution.

"William H. Zwick, Judge."

Defendant urges as its principal ground for reversal that this cause should have been submitted to the jury on the question as to the meaning of the word "overdraft," and though having pleaded that the contract was ultra vires, does not urge that on appeal, but cites numerous authorities to show that the contract was not ultra vires and concedes its validity. Plaintiffs likewise contend that the contract is not ultra vires, though urging their right to recover even though it may be so held; that by reason of the verdict of the jury in favor of plaintiffs and against the defendant Mascho in the first trial, to which the defendant bank was a party, the defendant bank is conclusively bound herein by said finding of the jury and the judgment of the court rendered thereon; and further contend that the contract of guaranty being susceptible of the interpretation on which plaintiffs parted with their money, it must be given this interpretation.

Both plaintiffs and defendant then seem to agree that the contract herein was not ultra vires, though plaintiffs argue that since defendant pleaded that it was ultra vires in its amended answer, and the trial court so held, it cannot now urge for the first time in this court that it was not ultra vires and is a valid and binding contract on the part of the bank. Without passing on that proposition, we are inclined to hold on the authority of Crowder State Bank v. Aetna Powder Co., 41 Okla. 394, 138 Pac. 392, that under the admitted facts herein this was such a contract as the bank was authorized to enter into, and was not ultra vires, and that the trial court was in error in so holding. Plaintiffs further contend that in either event, that is, whether ultra vires or not, they are entitled to recover herein, and we are inclined to agree with this proposition. On this proposition, that is, if ultra vires, we only have this to say: Defendant was certainly precluded, under the facts herein from asserting the invalidity of the contract as a defense, having received the benefits thereof, and would therefore be bound by all of its terms, and therefore became the guarantor of the defendant Mascho, so there was no error even on this theory in excluding the evidence offered by defendant as to the amount of its liability, same having been fixed and determined by the verdict of the jury and judgment of the court in the first trial. We prefer, however, to dispose of the case on the theory that it was a valid and binding contract.

The sole question, then, in our judgment, to be determined in this appeal is, as defendant admits in its brief, Did the trial court err in refusing to submit the question to the jury and in rendering judgment for the plaintiffs upon the pleadings and evidence? First, then, was there any issue of fact which, under the pleadings and proof, should have been submitted to the jury? The record discloses that the evidence in this case was practically the same as in the former trial, except plaintiffs introduced evidence as to the trade meaning of the word "overdraft," and the evidence of the defendant was confined almost exclusively to this point. This, in our opinion, is the only question of fact which might have been submitted to the jury. Conceding the contract to be valid, plaintiffs contend that because of the jury's finding in the first trial, to the effect that the cotton shipped by Mascho did not conform to the specifications of quality and quantity as represented by Mascho in his correspondence with plaintiffs, same is here conclusive as to the bank.

12 R. C. L. 1097:

"If the guarantor has notice of an action by the creditor against the principal and an opportunity to be heard, he is generally concluded by the judgment rendered therein." See cases therein cited.

Also in 32 Cyc. 135, it is said:

"Where the surety has had an opportunity to contest the claim of the creditor or obligee, he cannot afterwards contest it." See cases therein cited.

This proposition of law seems to be well settled and is not challenged by defendant herein. Was it necessary, then, for the trial court to submit to the jury the disputed question of fact as to the trade meaning of the word "overdraft?" We think not, in view of the fact that it

has heretofore been determined by this court that this contract of guaranty was ambiguous and was reasonably susceptible of the interpretation for which plaintiffs contend and upon which it appears they in good faith parted with their money.

In Lamm v. Colcord, 22 Okla.-493, 98 Pac. 255, it was said:

"In construing the language of an instrument * * * for the purpose of interpreting the same, to ascertain the intention of the parties, it should be taken more strongly against the guarantor and in favor of the party who has parted with his property, upon the faith of the interpretation most favorable to his rights."

This court cited with approval from the case of Lawrence v. McCalmont, 2 How. (U. S.). 426, 450, as follows:

"We should never forget that letters of guaranty are commercial instruments, generally drawn up by merchants in brief language, sometimes inartificial, and often loose in their construction and form, and to construe the words of such instrument with nice and technical care would not only defeat the intention of the parties, but would render them too unsafe a basis to rely on for extensive credits so often sought in the present active business of commerce throughout the world. * * * Indeed, if the language used be ambiguous and admits of two fair interpretations, and the guarantee has advanced his money upon the faith of the interpretation most favorable to his rights, that interpretation will prevail in his favor, for it does not lie in the mouth of the guarantor to say that he may, without peril, scatter ambiguous words by which another party is misled to his injury."

This doctrine was also followed by this court in case of Clements v. Jackson Oil & Gas Co.. 62 Okla. 66, 161 Pac. 797, wherein Lamm v. Colcord, supra, was cited with approval.

We therefore conclude that this case comes clearly within the rule announced in each of the cases above cited, and that the contract in question must be given the interpretation on which defendants in error relied when they paid the full amount of the draft after receiving defendant's wire as follows: "If Mascho overdrafts we will pay draft for the amount." This being true, the technical meaning as to the trade meaning of the word "overdraft" becomes immaterial, though evidence was introduced as to same. There was then no question of fact necessary to submit to the jury. It not only was proper, but, under the facts herein and law applicable thereto, it became the duty of the trial court to render judg-

ment on the pleadings and evidence. We are therefore of the opinion, from a careful review of the record in this case, in connection with the record in the two former appeals, which likewise have been examined, that under all the facts herein and the law applicable thereto there is no error sufficient to justify a reversal of this cause, and the judgment is therefore affirmed.

All the Justices concur, except MASON, V. C. J., absent and not participating.

Note.—See 28 C. J. p. 934, §79; 12 R. C. L. p. 1074; 5 R. C. L. Supp. p. 674; 6 R. C. L. Supp. p. 737.