## HUDSON-HOUSTON LBR. CO. v. FIRST STATE BANK et al.

No. 17675.    Opinion Filed March 27, 1928.

Rehearing Denied Sept. 11, 1928.

(Syllabus.)

1. **Contracts—Extension of Time for Payment of Debt and Forbearance from Suit as Consideration for New Promise.**

An extension of time for the payment of an indebtedness and forbearance from suit on a valid cause of action constitutes a legal consideration for a new promise to pay a like amount to the party granting such an extension and forbearing such suit.

2. **Mortgages—Claim of Wife to Equitable Interest in Land in Husband's Name—Superiority of Mortgage from Husband Taken for Value and Without Notice.**

Where a creditor grants to debtor a definite extension of time for payment of, and a forbearance from, suit on, a valid indebtedness, in consideration of the securing of said debt by real estate mortgage on property standing of record in the name of debtor, and where the mortgage is so accepted and such extension and forbearance given in good faith by creditor with no knowledge, actual or constructive, of any equity or trust in the mortgaged real estate in favor of debtor's wife, such creditor becomes an incumbrancer of such real estate for value and without notice, and his lien is superior to the claim of debtor's wife based upon the allegation that said real estate was purchased by her husband out of her separate funds.

Commissioners' Opinion, Division No. 2.

Error from District Court, Jefferson County; M. W. Pugh, Judge.

Action by Hudson-Houston Lumber Company against First State Bank of Ringling, Okla., et al., to foreclose real estate mortgage. Judgment for defendants, except as to J. S. Melton and Frank Blevins, and plaintiff appeals. Modified and affirmed.

Bridges & Vertrees and Anderson & Anderson, for plaintiff in error.

D. F. Spradling, for defendants in error.

BENNETT, C.    This was a civil action wherein Hudson-Houston Lumber Company was plaintiff, and J. S. Melton, Frank Blevins and First State Bank of Ringling were defendants, and Mrs. Belle Melton later became a party as intervener.

The parties will be referred to as they appeared in trial court. Plaintiff's petition alleged that, on the 1st day of May, 1922, J. S. Melton, for a valuable consideration executed and delivered to plaintiff his promissory note for $594.80 due October 15, 1922, with interest and attorney's fee, and that as a part of same transaction and for the purpose of securing payment of said note said Melton executed and delivered to plaintiff a mortgage covering lots 5 and 6 in block 41, in the town of Cornish, and that on same date and for the same purpose executed a chattel mortgage covering a frame building 14x28 feet then located on lot 12, block 43 in Ringling, Okla., and used by Frank Blevins as a paint shop.

It was further alleged that the note was long past due and unpaid by reason whereof the plaintiff sought foreclosure of his mortgage liens. The First State Bank of Ringling and Frank Blevins were alleged to have some interest in the property, the exact nature of which was unknown to plaintiff, but that it was inferior to the rights of plaintiff in the premises. There was personal service on J. S. Melton and Frank Blevins, who defaulted and made no defense, and judgment was taken against said defendants accordingly. The plea of intervention of Mrs. Belle Melton set out that lots 5 and 6 in block 41, in the town of Cornish, described in plaintiff's mortgage, were her sole and separate property; ·that same were bought from Mrs. Arabelle Breeden by warranty deed dated September 27, 1920, for the consideration of $550, as appears of record in book 68, at page 51, of the land records of Jefferson county, and that the purchase price was paid out of her funds by her husband, J. S. Melton, but that title to the property was taken without notice to her in the name of her husband. Second, that plaintiff had notice of interpleader's interest in said property before the execution of the J. S. Melton real estate mortgage to plaintiff, and that plaintiff was warned at said time that same was worthless without her signature, and she asks that her husband be declared a trustee of said property for her benefit, and that title thereto be conveyed to and quieted in her. Third, it is further set up that she is owner of the frame building covered by plaintiff's chattel mortgage. The answer and plea of the First State Bank alleged: First, that lots 5 and 6, block 41 in the town of Cornish,

Okla., were the homestead of J. S. Melton and Belle Melton at the date of plaintiff's mortgage, and that said mortgage was inoperative and void because Belle Melton did not execute same; second, that said lots were the sole and separate property of Belle Melton, but that title to same was taken in the name of J. S. Melton through error; and, third, that on April 17, 1923, for good and valuable consideration, said Melton and wife executed and delivered to First State Bank a mortgage covering said real estate to secure a note of even date for $1,293.15 which is due and unpaid.

Plaintiff's answer to the interplea was by general denial, and a specific denial that lots 5 and 6 were the property of interpleader; and, third, that if interpleader were owner of such property in equity, she had permitted same to be dealt with by her husband as his own property for several years and permitted him to exercise absolute control thereof and to take title thereto; that plaintiff, relying upon the record, had accepted as security said property and relied upon same as property of J. S. Melton, and that interpleader was thereby estopped. The plea of intervention of Mrs. Belle Melton was filed 18 months after this suit was begun. Plaintiff introduced in evidence the promissory note, the real estate mortgage, and the chattel mortgage sued upon, and rested. No evidence was introduced by defendants, or either of them, to sustain their allegation that plaintiff had knowledge of Mrs. Melton's claim of interest in the property at or before the execution of plaintiff's mortgage. No effort was made to sustain this issue. No evidence was introduced to show that this was the homestead of J. S. Melton and wife. J. S. Melton did not testify in the case. Mrs. Belle Melton, intervener, testified that she became owner of the frame building covered by the chattel mortgage in January, 1922, in a trade wherein she, through her husband, traded to Ed Bean her property for this building and other property. Witness is shown deed from Arabelle Breeden covering lots 5 and 6 in block 41 of Cornish, and she said that the property was bought from Mrs. Breeden with funds of the witness.

"Q. Who transacted that business for you? A. J. S. Melton. Q. Your husband? A. Yes, sir. Q. In whose name was that deed taken? A. It was taken in his name, but it was supposed to be in mine. Mr. Anderson: Objected to not responsive to the question, sustained by the court."

The warranty deed dated September 27, 1920, from Arabelle Breeden to J. S. Melton, conveying lots 5 and 6 in block 41, Cornish, Okla., for a consideration of $550, is introduced in evidence by interpleader. Witness said that she knew nothing about the deed being taken in Melton's name; that he said nothing about it; that the property belonged to her, and that she had not authorized the execution of any mortgage against it; that the first time she had any knowledge of the execution of the mortgage was when she was told about the same by Mr. McCrory sometime in June, in either 1922 or 1923; that she traded for the Bean property in 1922, about the first of the year, and that soon after trading for the frame building, she had it moved off and put on other lots where it now stands. This was very soon after the trade was made. It was then rented to Mr. Jones, and Mr. Melton rented it to Mr. Blevins. Does not know who occupied it after Jones. Does not know whether J. S. Melton rented it to Jones or not. Witness collected rents off of it for a month or two from the first tenant. Witness never occupied the place herself. After the first month or two the rent was paid to J. S. Melton.

"Q. Then you have not rented that to anyone or exercised any control since you traded from Mr. Dean in the way of occupying or rendering it for taxes? A. No, sir. Q. The mortgages that were given on both of these pieces of property to the Hudson-Houston Lumber Company were made in 1922, Mr Spradling asked you when you first learned that the real estate mortgage was put on the place in Cornish, what was your answer? A. Sometime in June. Q. What year? A. 1922. Q. That was the same year you bought the place? A. Yes, sir. Q. Did you talk to Spencer Melton at the time, your husband? A. No, sir. Q. He was there at the time, at home? A. Yes, sir. Q. You first filed your claim asking for this property in December, 1924, as your pleadings show, from June, 1922, when you learned of the mortgage till December, 1924, which was two years and one-half, did you take any steps to try to recover this property? * * * A. No, sir. * * * Q. When Mr. McCrory told you of the mortgage being on there even at the time this was your property? A. Yes, sir, he knew it was mine. Q. Why is it in the space of two and one-half years you did nothing about it? A. I didn't want to. Q. You didn't talk to the manager of the lumber yard? A. No, sir. Q. You don't remember whether or not he told you he had a mortgage on this property? A. Yes, sir, I remember. Q. He told you the Hudson-Houston Lumber Company had a mortgage? A. Yes, sir. Q. You said nothing at the time about it? A No, sir Q. Did you demand of your husband that he correct the deed to this property? A. No, sir, he didn't have no right

to deed it to me. Q. Just what do you mean? A. Because it was mine. Q. You learned it was in his name? A. Yes, sir. Q. When you found that this deed was wrongly taken in his name, did you try to have your husband deed it to you? A. No, sir. * * * Q. From June, 1922, up until you first talked to Mr. Spradling in December of 1924, did you talk to any lawyer about bringing suit? A. No, sir. Q You didn't file such proceedings? A. No, sir. Q. You just let the matter rest where it was? A. Yes, sir. Q. Did you ever see the deed, when did you first see this deed made by Arabelle Breeden? A. Just a little bit after it, the place was bought. Q. The place was bought in September, 1920? A. Yes, sir. Q. You read the deed. A. Yes, sir. Q. You had the deed at home? A. Yes, sir. Q. You saw what was in it? A. Yes, sir. * * * Q. At the time wou bought this Breeden property did you carry the money belonging to you on deposit in the bank? A. No, sir, I don't think it was in my name. Q. Whose name was it in? A. J. S. Melton. Q. Your husband? A. Yes, sir. Q. You didn't give a check for the purchase of the Breeden property? A. No, sir; I didn't."

Mr. McCrory, an officer of the First State Bank, testified that sometimes money was carried on deposit in J. S. Melton's name and sometimes in his wife's name.

O. S. Davis, manager of Hudson-Houston Lumber Company, testified for defendants that he was such manager and that the note representend an open account for lumber sold by plaintiff to J. S. Melton, and that the account was past due at the time the note was executed, and that plaintiff had tried numerous times to collect the account, and finally told Melton that if the account was not satisfied or secured, that suit would be brought against him, and thereupon J. S. Melton executed the note and secured the same by the two mortgages sought to be foreclosed, and that no suit was brought.

At the close of evidence of defendants and Mrs. Belle Melton, intervener, plaintiff demurred to evidence of each of them on the ground that same was insufficient to establish a right to property herein sought to be foreclosed superior to that of the lien of plaintiff's mortgages, and also moved the court for judgemnt on that account against said bank and said intervener. The same was overruled with exceptions saved. Upon conclusion of evidence judgment was rendered in favor of defendants First State Bank and Mrs. Belle Melton. In the journal entry the court says:

"The court finds that the only consideration supporting the note and mortgages sued on by plaintiff was a forbearance by plain-

tiff to sue J. S. Melton, and that such is not a sufficient consideration as against First State Bank and Mrs. Belle Melton."

The court thereupon decreed Mrs. Belle Melton owner of lots 5 and 6, block 41, Cornish, Okla.; that J. S. Melton held the naked legal title in trust for her, and is ordered to make conveyance of same to her; that the mortgage of plaintiff thereon be canceled and that intervener's title be cleared of any cloud by reason of such mortgage, and that First State Bank have a lien upon said real estate for amount of its mortgage thereon. The chattel mortgage of plaintiff is also canceled.

The motion for new trial and the assignment of error contains several grounds, but those determinative and the only ones necessary to be considered are: First, that the evidence is insufficient to establish a resulting trust in this property in favor of Mrs Belle Melton and First State Bank; second, that if the court should find that the evidence is sufficient to establish a trust in this property in favor of Belle Melton against her husband, such trust cannot be enforced by Belle Melton against plaintiff for the reason that plaintiff is a bona fide incumbrancer for value without notice of the secret trust. These questions are argued together.

Section 8464, C. O. S. 1921, is as follows:

"**Innocent Purchaser.** No implied or resulting trust can prejudice the rights of a purchaser or incumbrancer of real property, for value and without notice of the trust."

Section 8463, C. O. S. 1921, is as follows:

"When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

"Where property is purchased by one with the money of others, a trust arises in favor of such others." Clark v. Frazier, 74 Okla. 141, 177 Pac. 589.

"Resulting trusts are not within the statute of frauds. * * *" Boyd v. Winte, 65 Okla. 141, 164 Pac. 781.

Under these authorities, if the interpleader is entitled to anything with reference to this real property, it is by reason of the fact that she furnished to her husband funds for the purchase thereof, and he took title thereto in his own name, and by reason whereof a resulting trust followed as a matter of law; but under section 8464, supra, the rights of Mrs. Belle Melton in this case cannot be asserted as against the right of a purchaser or incumbrancer of such property for value and without notice. The en-

tire proof showed that J. S. Melton was indebted for lumber to plaintiff in the exact amount of the note sued upon and secured by the mortgage to plaintiff, and that, when pressed for payment and threatened with suit, if he did not pay or secure the debt, he secured the debt by the execution and delivery to plaintiff on these mortgages. The record showed Melton to be owner of the real estate, and the only question in the mind of the trial judge, and, it seems, the only question involved here, is whether or not the plaintiff was an incumbrancer for value and without notice. It is not argued nor contended, nor is there any evidence, that plaintiff had notice, so the question is simplified to whether or not plaintiff was an incumbrancer of the real estate for value.

Section 5019, C. O. S. 1921, is as follows:

"**Good Consideration Defined.** Any benefit conferred, or agreed to be conferred upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

The court in the journal entry found in effect that there was a forbearance on part of plaintiff to sue. The uncontroverted proof of this is found in the cross-examination of O. S. Davis, a witness for defendants, whose testimony clearly shows that plaintiff had decided to sue Melton for this debt, but agreed to forbear in consideration of receiving the mortgages sued on herein, and by reason thereof, and upon such consideration, the time of payment of such debt was extended from May 1, 1922, the date of the note, until October 15, 1922, the maturity day of the note herein sued on. No attempt is made to contradict or to explain this testimony. The trial court accepted it as true, but denied the effect of same by saying that the consideration was not sufficient. Is forbearance to sue a sufficient consideration?

In Linton v. Chestnutt-Gibbons Grocer Co., 30 Okla. 103, 118 Pac. 385, the court says in the third paragraph of the syllabus:

"The extension of a debt, then due, for 30 days is a sufficient consideration for the surety's obligation on such note."

The opinion quotes from Daniels on Negotiable Instruments, sec. 183, as follows:

"Not only will money, or advances made, or credit given, or work and labor done constitute a consideration sufficient for a bill or note, but receiving a bill or note as security for a debt, or forbearance to

sue upon a present claim or debt, * * * or becoming surety or giving an extension of time to an imputed debtor, * * * will be equally sufficient to enforce his engagement."

See, also, Doxy v. Exchange Bank, 19 Okla. 183, 92 Pac. 150; Willoughby v. Ball, 18 Okla. 535, 90 Pac. 1017; Harrell v. Tennant, 30 Ark. 684; Rockafellow v. Peay, 40 Ark. 69; Wright v. McKitrick, 2 Kan. App. 508, 43 Pac. 977; Prentice v. Zane, 8 How. 470, 12 L. Ed. 1160.

The first paragraph of the syllabus in Sawyer v. Bahnsen, 102 Okla. 41, 225 Pac. 344, is as follows:

"An extension of time for the payment of indebtedness or forbearance from suit on a valid cause of action constitutes a sufficient consideration for a new promise to pay a like amount to the party granting such extension or forbearing such suit."

"A note given in settlement of a disputed claim, which might have become the subject of litigation, fairly made, in good faith, without mistake, undue influence, misrepresentation, or fraud, is valid and based upon sufficient consideration." First National Bank of Tecumseh v. Harkey, 63 Okla. 163, 163 Pac. 273.

"Refraining from bringing a suit may furnish a consideration. The actual forbearance, or the promise to forbear, to prosecute a claim on which one has a right to sue, is universally held to be a sufficient consideration. Thus, the following have been held sufficient: Extension of time for the payment of a debt. * * *" 13 C. J. page 344, par. 194.

In the case of O'Brien v. Fleckenstein, 180 N. Y. 350, 73 N. E. 30, there is in the syllabus the following:

"Where a debtor obtained from his creditor a valid extension of the time of payment of a debt, and gave a mortgage for the same, the creditor became a bona fide purchaser within the meaning of the recording act (Laws 1896, p. 606, c. 547, par. 241), and the mortgage took priority over one previously given to another, but not recorded until after the second mortgage."

In the body of the opinion, it is said:

"Where a party gives a valid extension of the time of payment of a pre-existing debt, and takes a mortgage as security for the same, he is thereby constituted and given the character of a bona fide purchaser for a valuable consideration within the meaning of the recording act."

In Durkee v. National Bank, 36 Hun. 565, it was held that a mortgage for a pre-existing debt constituted the mortgagee a purchaser for valuable consideration where the mortgagee extended the time of payment of the debt which it was given to secure, and

there was a prior unrecorded mortgage. In that case the New York statute provided that unrecorded deeds should be void as against a subsequent purchaser in good faith for a valuable consideration.

It was held in Thomas v. Rembert, 63 Ala. 561, that a mortgage on land for an antecedent debt constituted mortgagee a bona fide purchaser for value where there was an extension of time given at the time of the execution of the mortgage, and there were prior equities against the land of which mortgagee had no notice. To the same effect: Thurman v. Stoddard, 63 Ala. 336; Cook v. Parham, 63 Ala. 456; Branch v. Griffin, 99 N. C. 173; Cass County v. Oldham, 75 Mo. 50; Davis v. Lutkiewiez, 72 Iowa, 254, and Gordon v. English, 3 Lea (Tenn.) 634. In Sullivan Saving Inst. v. Young, 55 Iowa, 132, it was held that in a mortgage taken to secure antecedent debt the extension of the time of payment for one day constituted mortgagee a bona fide incumbrancer for value. The same doctrine was announced in Deere v. Marsden, 88 Mo. 512, and Schumpert v. Dillard, 55 Miss. 348; Gilchrist v. Gough, 63 Ind. 576, 30 Am. Rep. 250.

"Value" has been definitely defined by our statute. Section 7695, C. O. S. 1921:

"Value Defined. Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value, and is deemed such whether the instrument is payable on demand or at a future time."

During the trial plaintiff's counsel asked of defendants' counsel; "Mr. Spradling, do you contest the consideration of this note?" to which Mr. Spradling replied, "No, sir." So we have a valid, uncontested, pre-existing debt due and a valid note secured by what appears to be a valid mortgage given to secure such obligation and an extension of time granted the debtor as consideration for the security. Even a holder of a note as collateral is held to be a purchaser for value. Stevens v. Grisso, 91 Okla. 154, 216 Pac. 671; Stevens v. Shands, 91 Okla. 214, 217 Pac. 213; Stevens v. Noe, 91 Okla. 211, 217 Pac. 213.

Since there was but one issue to be determined which might have relieved the defendants from this mortgage, to wit, the issue as to consideration, and since all the proof discloses that the consideration was sufficient, the court should have rendered judgment for the plaintiff as to the real estate mortgage. In addition to the legal ground above set forth, this court might well base its judgment upon the insufficiency of the testimony of defendant as to the resulting trust, and also the rather doubtful testimony of the feme defendant with respect to her equivocal dealing with this property, for it is the general rule that trusts of this character must be established by clear, strong and convincing proof—many authorities go even further. We will say only that the testimony is very uncertain and inconclusive, and the fact that she discovered the lots which she says were bought with her money were conveyed to her husband to her knowledge in 1920, and she made no move to correct this error, permitted her husband to hold the legal title and manage the property, and only moved to protect herself 18 months after the filing of this cause, and neither introduced her husband as a witness nor accounted for her failure so to do, is significant in the extreme.

With reference to the chattel mortgage covering the frame house, the statute dealing with resulting trusts does not apply. Moreover, there is nothing in the record that would even indicate that this personal property was conveyed to the husband either by bill of sale or otherwise, and while there may be considerable evidence to the contrary, and inferences which may be drawn from the facts proven which would be unfavorable to Mrs. Melton, still, we are not disposed to set aside the holding of the court with respect to the frame building, or the chattel mortgage, in so far as the same affects the said frame building or the rights of Mrs. Melton or the bank.

For the reasons given the judgment of the trial court is modified, and the case is remanded, with directions to the trial court to enter judgment for the plaintiff for the foreclosure of its real estate mortgage, and declaring same a first lien on lots 5 and 6, block 41. Cornish, Okla., in conformity with this opinion, and the judgment in all other respects is affirmed.

JEFFREY, DIFFENDAFFER, LEACH, and HERR, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 13 C. J. p. 344. 345, §194; 6 R. C. L. pp. 6659-661; 4 R. C. L. Supp. p. 432. (2) 41 C. J. p. 533, §475