Geraldine ROSS, Plaintiff in Error,

v.

L. A. RUSSELL, d/b/a Russell Insurance Agency, Defendant in Error.

No. 42109.

Supreme Court of Oklahoma.

Sept. 29, 1970.

William H. Mattoon, Norman, for plaintiff in error.

James H. Ballard, Purcell, for defendant in error.

McINERNEY, Justice.

In 1958 one A. C. Ross suffered a financial failure and departed the State of Oklahoma for New Mexico, leaving behind a debt to Plaintiff insurance agent for some $2,645.35 owing in unpaid premiums which had accrued between 1954 and 1956. In 1960, and in response to a demand by Plaintiff insurer for payment, Mr. A. C. Ross's wife, Mrs. Geraldine Ross, Defendant herein, wrote the following holographic letter on January 9, 1960 to Plaintiff's New Mexico attorney, in which she stated, in part:

"We could of & were legally entitled to take bankruptcy, but for moral reasons we did not. We intend to pay every one we owe, but it will take time."

and concluded,

"I feel a personal responsibility to Mr. Russell and intend that he be paid. We hope by this summer to be able to pay all our creditors a small amount each month—If not I intend to work until our debts are paid & I personally intend to pay Mr. Russell when it gets his turn. I mean when I get the First State Bank paid.

"There is no possibility that we can pay one nickel right now. No law suit or anything else will get it cause we don't have it. It would only ruin the progress we have made & force us into bankruptcy.

"He will just have to be patient a little longer."

Plaintiff thereafter did in fact decline to sue Mr. Ross. In subsequent correspondence, however, he renewed his demand that Mr. Ross pay his debt, and even forwarded a one-year promissory note for both Mr. and Mrs. Ross to sign; and Defendant Mrs. Ross suggested the desirability of a settlement. The last letter to Plaintiff from Defendant Mrs. Ross was apparently that of August 10, 1960, wherein she referred to the progress that had been made in repaying their other creditors, and stated "We now owe only you and the First State Bank. It isn't that we favor you less you have just been nicer to us," and "We do appreciate the patience you've shown."

Plaintiff's position in this litigation is that Defendant Mrs. Ross's above-quoted letter of January 9, 1960, constituted a contract of guaranty for her husband's debt to Plaintiff, or alternatively, that it constituted an offer of guaranty therefor which Plaintiff accepted by his act of forbearing to sue Plaintiff's husband as principal debtor; and on this basis Plaintiff eventually brought this action not against Mr. Ross as principal debtor, but against Mrs. Ross as guarantor in 1964, after he learned that the Rosses had paid their First State Bank debt. The trial court sustained Plaintiff's motion for summary judgment, and granted attachment on Mrs. Ross's separate property in Oklahoma.

The fundamental question facing this Court, in reviewing the summary judgment below, is what legal interpretation or construction is to be inferred from Mrs. Ross's statements in her letter of January 9, 1960, that "We intend to pay every one we owe, but it will take time," "I feel a personal responsibility to Mr. Russell and intend that he be paid," and "* * * I intend to work until our debts are paid & I personally intend to pay Mr. Russell when it gets his turn. I mean when I get the First State Bank paid."

A written guaranty or offer of guaranty, as with contractual obligations generally, need not be formally enunciated in any particular mode of expression. Federal Savings & Loan Assn. v. Bell, 146 Okl. 128, 131, 293 P. 214, 217 (1930). Thus, this Court in the past has had no difficulty in inferring guaranty from such expressions as "If Mascho overdrafts we will pay draft for the amount," First Nat. Bank of Chandler v. Cleveland, 127 Okl. 176, 179, 260 P. 80, 82 (1927); "We will also see that Bell carries out his part of

the agreement," Federal Savings & Loan Assn. v. Bell, *supra;* and, apparently, "I will stand good for same," Lamm Co. v. Colcord, 22 Okl. 493, 98 P. 355 (1908). For further examples see 38 Am.Jur.2d Guaranty, § 6.

By contrast Defendant cites the case of Allen West Comm. Co. v. Richter, 286 Mo. 691, 228 S.W. 827 (1921), wherein no guaranty was found despite a letter from the corporate defendant's ex-president stating that "I beg to inform you that though the debt is not mine, I intend to see it paid"; however, other decisive factors were also present in that case, and the validity of same might be open to some question in view of the same jurisdiction's later case of National Refining Co. v. McDowell, Mo., 201 S.W.2d 342 (1947), wherein the Missouri Supreme Court inferred guaranty from the confluence of such statements by the corporate debtor's president and primary stockholder as "I personally assure you you will not regret our account," "I assure you that this [inability of the indebted corporation to pay its debts] is only temporary as this is a firm contract with the War Department, *in my name personally* and cannot be upset," and "I will guarantee you personally I will never let you down." 201 S.W.2d at 344, 345.

■ Defendant also cites the general rule of contract law that "An intention to do an act is not an offer to do it. Accordingly, a mere expression of intention or general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer," quoting from 17 Am. Jur.2d, Contracts, § 31. Admitting that the question here is close, we nevertheless feel that such statements by Defendant as "I personally intend to pay Mr. Russell when it gets his turn" should be accorded a common-sense rather than a strictly technical meaning; and, in view of the Oklahoma doctrine that "In determining from the language used whether a guaranty exists, the language used should be taken most favorably against the guarantor and in favor of the party who acted upon the faith of the interpretation most favorable to his rights," Federal Savings & Loan Assn. v. Bell, 146 Okl. 128, 131, 293 P. 214, 217 (1930), we feel it is reasonable to infer that Mrs. Ross was more probably making a promise or offer to back up and pay her husband's debt, rather than merely expressing a naked desire or expectation that it someday should be paid.

Defendant next urges that her guaranty, or offer of guaranty, required a consideration, and that an uncontracted, unrequested forbearance was an insufficient consideration to contractualize her guaranty herein, citing once against Allen West Comm. Co. v. Richter, 286 Mo. 691, 228 S.W. 827 (1921), which went so far as to suggest that a forbearance not enforceable as a binding *promise* to forbear against the creditor cannot be a legal consideration. In analogous situations within this jurisdiction, however, forbearance in fact (as opposed to the mere promise to forbear) appears to constitute contractual consideration. Linton v. Chestnutt-Gibbons Grocer Co., 30 Okl. 103, 118 P. 385 (1911), Syllabus 3; Hudson-Houston Lumber Co. v. First State Bank, 132 Okl. 125, 269 P. 1054 (1928); Anderson v. Barr, 178 Okl. 508, 62 P.2d 1242 (1936); Cole v. Ulrey, 185 Okl. 90, 90 P.2d 430 (1939). Regarding the guaranty situation in particular, 38 Am.Jur.2d Guaranty, § 46, pp. 1048, 1050–1051 declares the general rule that *either* a promise to forbear *or the forbearance in fact* is sufficient to constitute a consideration for an offer of guaranty, although some conflict or confusion in the case law is noted.

■ The Annotation, "Forbearance as Sufficient Consideration for Guaranty," 78 A.L.R.2d 1414 (1961), Part III, Forbearance in Fact, pp. 1433–1455, also recognizes some conflict in the authority on the

point but submits the cases holding bargained-for forbearance in fact as constituting valid consideration to be the better rule. Professor Corbin explains the conflict thus:

"It became a common statement in the last century that 'both parties must be bound or neither is bound.' This led to a number of decisions in respect to forbearance as a consideration that are quite erroneous. They held that forbearance alone would not be sufficient, and that the return promise would not be binding unless there was a promise to forbear and not merely forbearance in fact."

\*　　\*　　\*　　\*　　\*　　\*

"There are plenty of cases holding that forbearance if expressly or impliedly bargained for is a sufficient consideration; and the contrary decisions and dicta must be disregarded."

1 Corbin, Contracts, 1963 Ed., § 137, pp. 583, 585–586. See also in the same work §§ 66 and 144. We therefore decline to follow the extreme doctrine laid down in Allen West Comm. Co. v. Richter, supra, if indeed that still be the law of Missouri in view of the subsequent case of National Ref. Co. v. McDowell, supra, and instead adopt for this jurisdiction the clearly majority and modern view that bargained-for and performed forbearance in fact is a valid consideration for a guaranty.

■ We also adopt therewith, however, the *caveat* that the forbearance claimed as a consideration must be more than "mere forbearance" unilaterally indulged in by the creditor, unbargained or uncontracted for between the creditor and the putative guarantor; the forbearance in fact must, of course, still be pursuant and in response to some request, whether expressed or implied, in the offer of guaranty.

■ But the request, as with the guaranty itself, need not be expressed in any particular mode or terminology; rather it may be fairly inferred from a common-sense reading of the language of the guarantor, or from the circumstances. See cases collected in Annotation, supra, 78 A. L.R.2d at 1440. And upon examination of Defendant's January 9, 1960 letter, we feel that, despite absence of formalistic "I request" verbiage, it was not only a request, but approached and bordered upon being a plea for Plaintiff not to sue Mr. Ross.

■ Which now brings us to the problem of whether Plaintiff's forbearance was in fact *responsive* to Defendant's plea (as opposed to being a unilateral inaction by Plaintiff *independent* of Defendant's assurances of ultimate payment). We are persuaded of the former by two facts: First, Plaintiff had gone to the trouble of retaining a New Mexico attorney (normally indicative of imminent litigation) but declined to sue after receiving Defendant's periodic pleas and assurances; and second, Plaintiff patiently waited four full years before filing suit—and did not in fact do so until after the "First State Bank" debt had been paid, as always outlined and scheduled in Mrs. Ross's correspondence throughout. We find it more probable than not, therefore, that Plaintiff's forbearance was in reliance upon Mrs. Ross's word, and not merely because of the unprospectiveness of suit against Mr. Ross directly.

■ Defendant raises several other subsidiary objections which merit some passing consideration. One is an implication that she never received notice of Plaintiff's acceptance of her offer. Acceptance in the guaranty context can, however, be by actual performance, 1 Corbin, Contracts, § 66, so notice in this context would be presumed, or be considered unnecessary, if Defendant knew or should have known that Plaintiff was in fact performing his end of the guaranty contract (i. e., by forbearance). Midwest Eng. & Const. Co. v. Electric Regulator Corp., Okl., (1967) 435 P.2d 89, at 100, and Sylla-

bus 6; see also 1 Corbin, Contracts, § 68. And we further feel that Defendant's statement in her August 10, 1960, letter, wherein she stated "We do appreciate the patience you've shown," was nothing other than an acknowledgment by Defendant that Plaintiff was in fact proceeding with and actually performing his pleaded forbearance.

Defendant's final contentions are based upon certain correspondence from Plaintiff's New Mexico attorney subsequent to Defendant's January 9, 1960, letter, wherein the attorney again urged prompt payment of Mr. Ross's debt, and even forwarded a one-year promissory note for both Mr. Ross and Defendant to sign. Defendant argues that the demand for payment indicated that Plaintiff had ceased relying on Defendant's assurance of payment, and that the proffer of a note constituted a counteroffer and thereby a rejection of Defendant's original offer of guaranty.

We are not impressed with these arguments. The fact that a creditor may try to improve his position while actually continuing his forbearance does not in and of itself negate the fact or import of such continued forbearance; and at any rate, Defendant's *subsequent* letter of August 10, 1960, wherein as stated above she reiterated her appreciation for Plaintiff's patience, constituted a reacknowledgment on her part of Plaintiff's continuing forbearance. Nor do we feel that Defendant's interim suggestion of a settlement constituted a retraction of her offer of guaranty. First, the settlement mentioned in that letter of hers could easily have referred to her husband's principal debt, and not to her own undertaking; but even if not, her plea for settlement cannot under the circumstances be taken as a repudiation of her obligation, but instead as a reaffirmation thereof, coupled with a plea for leniency.

Affirmed.

All the Justices concur.