NATIONAL BANK OF COMMERCE, *a Corporation Organized and doing business under the National Banking Laws of the United States* v. BEN JONES.

(Filed June 25, 1907.)

1. **CHATTEL MORTGAGE—Recording—Removal of Property.** Where the owner of chattels covered by a valid recorded mortgage removes the chattels without the knowledge or consent of the mortgagee to another county, it is not necessary for the mortgagee in order to preserve the lien to file the mortgage or a copy thereof for registry in the county to which the property is removed.

2. **SAME—Lien of—Agistor's Lien.** The lien of a valid recorded chattel mortgage will take the precedence over the subsequently acquired lien of a livery stable keeper or agistor upon animals placed in his charge, unless such animals were delivered to such lien holder to be kept and cared for by him with the consent of the mortgagee.

3. **SAME—Same—Act of Legislature—Void When—Constitutional Law.** An act of the legislature which postpones an existing valid mortgage lien and makes a subsequently created lien superior to the mortgage lien, is a law impairing vested property rights and impairing the obligations of a contract, and is void for conflict with the constitution of the United States.

(Syllabus by the Court.)

*Error from the District Court of Pawnee County; before Bayard T. Hainer, Trial Judge.*

*Wrightsman & Fulton* and *James B. Diggs,* for plaintiff in error.

No appearance for defendant in error.

Opinion of the court by

BURFORD, C. J.: One I. S. Jones was a resident of Payne county, Oklahoma, and there owned and kept one gray horse, valued at $60. On December 6, 1900, he executed to the National Bank of Commerce at Stillwater a chattel mortgage upon said horse, to secure the payment of the sum of $59.50, due September 6, 1901, and bearing 12 per cent. interest after maturity. This mortgage was filed for record in the office of the register of deeds of Payne county on the same day it was executed. On October 6, 1901, the horse was left in the possession of the defendant Ben Jones, at Ralston, in Pawnee county, Oklahoma, without the knowledge or consent of the mortgagee. Ben Jones was the keeper of a feed barn, and kept and fed the horse until the commencement of this action, at which time there was due him for feed and care of the horse as found by the court the sum of $25. The mortgagee demanded possession of the horse in December 1901, and Jones refused to deliver possession until the feed bill was paid. The mortgagee refused to pay this bill, and on December 10, 1901, began this action in replevin before the probate court of Pawnee county. The horse was taken on the writ of replevin and delivered to the plaintiff, who retains possession. On the trial in the probate court it was held that the mortgagee could not recover, and the horse was ordered returned to the defendant. Appeal was taken to the district court of Pawnee county, and the cause there tried to the court, and judgment rendered sustaining the lien of the defendant for feed and care for the sum of $25. which the plaintiff was ordered to pay, or on default in payment, to return the horse. This judgment was ren-

dered upon the express holding by the trial court that the lien for feed and care was superior to the mortgage lien. The bank, the mortgagee, brings the case here for review, and the sole question for determination is, which is the superior lien, that of the mortgage to the bank, or that for feed and care claimed by the liveryman?

It is said in the brief that the trial court held that the bank had lost its lien by failure to have the mortgage filed for record in the office of the register of deeds of Pawnee county after the horse was removed from Payne county. Such is not the law. When the owner of the horse, who resided and kept the horse in Payne county, executed a mortgage upon the horse, and it was duly filed for record in such county, the mortgage lien became effective against all persons who subsequently dealt with the property, and a removal of the property by the mortgagor without the consent or connivance of the mortgagee would not affect the validity of the mortgage lien.

It is said in Jones on Chattel Mortgages, sec. 260:

"The removal of a mortgagor from the town or county in which he resided when the mortgage was executed, and where it was duly recorded, and the taking of the mortgaged property with him, does not invalidate the record of the mortgage, or necessitate the recording of it again in the town or county to which he has removed. The object in requiring a record of the mortgage is to give publicity to it, and to provide a source of information common to all persons, so that they may determine with some degree of facility, convenience and certainty, the question of title to the property

whenever they may be interested to know it, while at the same time it is not among the purposes of recording acts to subject a *bona fide* mortgagee to the inconvenience of the constant vigilance and ceaseless watching which would be requisite to guard and secure his interests if he were obliged to record his mortgage in every town into which the mortgagor might see fit to remove with the property. If he were required to do this, his security would be well nigh worthless, for before he could do this a creditor of the mortgagor might seize the property by process of law or the mortgagor might pass the title to it by way of sale to an innocent purchaser."

This rule is sustained by abundant authority. See also 6 Cyc. 1088, 1089 and authorities there cited.

The next contention is that the lien for feeding and caring for the horse is superior to that of the mortgage. The weight of authority is to the effect that a lien for feeding and caring for domestic animals is not superior to the lien created by a prior valid recorded mortgage. Jones on Liens, vol. 1, sec. 691. It is also stated in 19 Am. & Eng. Enc. 2nd ed. p. 438: "It is held by the overwhelming weight of authority that the lien of a prior valid recorded chattel mortgage will take precedence over the subsequently acquired lien of a livery stable keeper or agistor upon animals placed in his charge unless such animals were delivered to the livery stable keeper or agistor to be kept and cared for by him with the consent of the mortgagee." The supreme court of Kansas has adopted a rule to the contrary in a number of cases, but the authorities generally are not in accord with the decisions of that court.

But it is said that our statute changes the general rule, and that in this case the mortgage lien must be held inferior to the lien of the agistor. This cannot be. The statute referred to was adopted February 28, 1901, almost three months after the mortgage had become a valid lien and the rights of the mortgagee completely vested. This statute, chapter 3, session laws, 1901, p. 43, is as follows:

"Section 1. That any person or persons employed in feeding, grazing or herding any domestic animals, whether in pasture or otherwise, shall for the amount due for such feeding, grazing or herding have a lien on said animals.

"Section 3. All liens not to exceed in the aggregate twenty-five per cent. of the value of such animals against any domestic animal or animals for labor, grazing, herding or feeding, or for corn, feed, forage or hay, furnished the owner of such domestic animals as herein provided and actually used for such purpose, shall be prior to all other liens thereon, and no recital or stipulation in any mortgage or other incumbrance on any cattle so fed shall be held to supersede or vitiate the lien here provided for."

The constitution of the United States, which is the supreme and paramount law of the land and controlling upon all bodies either legislative or judicial within the territories, in article 1, section 10, provides:

"No state shall pass any law impairing the obligation of contracts:" and by the provisions of the organic act this provision of the constitution, as well as all others not locally inapplicable, is put in force in this territory. Organic act, sec. 28. An act of the legislature which seeks to impair the obligations of a contract, or to impair or destroy vested property rights, is unconstitutional and void. *Toledo Rail-*

*road Co. v. Hamilton* 134 U. S. 296, 33 L. Ed. 905; *Crowther v. Fidelity Ins. Co.* (C. C. A.) 85 Fed. 43; *Yeatman v. King,* 2 N. Dak., 428, 41 Am. St. 758, note; *Giles v. Stanton,* 85 Tex. 620; Jones on Liens, vol. 1, sec. 701.

These authorities lay down the doctrine that a mortgage lien constitutes a vested property right, and after it has attached the legislature has no power to create a lien superior to the vested interest, or to provide that such vested lien shall be made inferior to a lien subsequently created, and we think this rule sound, and in harmony with reason and justice.

The judgment of the district court is reversed at the costs of defendant in error, with directions to vacate and set aside the judgment in favor of the defendant, and to enter judgment for the plaintiff, that it was entitled to the possession of the horse at the time it commenced its action, and for its costs.

Hainer, J., who presided in the court below, not sitting; all the other Justices concurring.