## FOSTER et al. v. MARSHALL.

No. 19277. Opinion Filed Feb. 11, 1930.

Commissioners' Opinion, Division No. 2.

J. A. Bass, for plaintiffs in error.

Brett & Brett, for defendant in error.

HALL, C. This action was instituted by R. N. Marshall in the district court of Carter county to cancel a certain tax deed and quiet title to 90 acres of land which defendants W. C. Foster and W. A. Samples claimed under a tax deed. Three years prior to the commencement of the action, W. C. Foster had obtained a tax deed covering the premises and had transferred an interest therein by a regular conveyance to the defendant W. A. Samples.

The defendants answered, setting up the regularity of the tax deed and tax proceedings. At the trial, we think they established clearly, that, in obtaining the tax

deed, the provisions of the statutes were strictly pursued. The court, however, held the tax deed void upon certain constitutional grounds, to wit, that the land was sold in part to satisfy an interest claim of 18 per cent. per annum in favor of the tax certificate holder, and that this procedure and the statute upon which it was founded is contrary to section 2 of art. 14 of the Constitution, which provision of the Constitution is a restriction upon the Legislature and all persons to create or charge a greater rate of interest than ten per cent. per annum, which is the maximum contract rate which may be charged without offending this provision of the Constitution.

The theory of the trial court in this connection, and the argument of defendant in error, is to a considerable extent plausible, but it is sufficient to say that this court in an early decision held to a contrary view, and we may consider that question as having been foreclosed.

Defendant in error also contends that, by reason of the fact that at the time the tax deed was executed he held a valid and unsatisfied mortgage thereon duly recorded, he was entitled to notice of the application for a tax deed. To be more specific, the plaintiff contends that the failure of the tax certificate holder to give plaintiff some character of notice of his intention to apply for a tax deed, and the issuance of a tax deed without this notice to him, the holder of a valid recorded mortgage, was such an omission and such a proceeding as to deprive him of his property without due process of law, and that his right in this regard is protected by both the state and the federal Constitutions.

The statute, section 9749, Comp. Stat. 1921, designating the requisite notice before the issuance of a tax deed to a holder of a tax certificate, does not expressly or impliedly provide for a notice to be served upon a mortgagee of the premises. However, if the failure to give notice to a mortgagee violates a constitutional provision, it is immaterial whether the statute prescribes notice or does not prescribe notice. If the Constitution, by its terms, requires the service of notice, the omission to provide for it in the statutes is not material. Unfortunately, there is no decision squarely in point, and the conclusions which we must reach must be wholly by analogy.

It has been definitely settled that a state law or a proceeding under a state law attempting to divest the owner of his land at a tax sale without some appropriate character of notice would be in violation of the Fourteenth Amendment to the federal Constitution, in that it would be depriving him of his property without due process of law. 26 R. C. L. 406. Castello v. McConnico, 168 U. S. 674, 18 S. Ct. 229, 42 L. Ed. 622.

Section 9749, Comp. Stat. 1921, is the statute which provides the method of extinguishment of title of the owner by the acquisition of a tax deed to the land by the tax certificate holder. The preliminary notice of sale, which the statutes prescribe to be given by the county treasurer at a period more than two years prior to the application for the tax deed, is a notice directed to the owner and interested persons that, unless the taxes are paid, the property will be sold and a tax certificate issued pursuant to the statutes. That notice does not purport to be a process or a notice to the owner that a tax deed will be summarily or otherwise issued, or that his right of redemption will be cut off; but is a notice under which, by the terms of the statutes, all parties know that only a tax sale certificate can be issued; and it rests upon good reasons, as well as upon the decisions of the courts, that the right of the parties interested to subsequent notice that after a specified time, the right of redemption will be cut off, vests at the time of the sale, and that such right cannot be taken away by even a subsequent statute. Cole v. Lamm, 81 Minn. 463, 84 N. W. 329.

The case of Cole v. Lamm was decided in 1900, and in the second paragraph of the syllabus it was held:

"The purchaser of lands from the state bid in for taxes under G. S. 1894, secs. 1654, 1660, is in all cases required to give 60 days' notice after the three-year redemption period provided by law expires, and upon proof of such notice the additional 60 days becomes a portion of the full redemption period to which the landowner is entitled, and of which he cannot be constitutionally deprived."

In the body of the opinion, the court said:

"It seems quite clear that the several sales included in the tax judgment under Laws 1899, c. 322, were controlled by the redemption period provided for at the time when such sales were made, since the period of redemption existing at the time of the original sale became an assured right between the landowner and the state, which could not be taken from him; and he might thereafter go his way relying upon the assurance of the law that he would not be deprived of the title to his property until notice had been given, and the additional time to redeem had expired thereafter, * * * since such prior provision which conferred vested

rights upon the landowner at the time of the original sale is not affected by the section of chapter 322 repealing all acts inconsistent therewith, for such vested rights in the owner cannot be constitutionally taken away, even by legislative action. Desty, Tax'n, p. 138, and cases cited."

Said section 9749 provides for the notice to redeem, and in case of failure of redemption, a forfeiture of the property.

Speaking of the importance and requisites of notice or process, the authors of Ruling Case Law, vol. 21, p. 1262, summarized the principle in the following language:

"It is a principle that lies at the foundation of all jurisprudence in civilized countries that a person must have an opportunity of being heard before a court can deprive him of his rights. Any other doctrine would be antagonistic to our form of government, and to the provisions of our Constitution."

Quasi judicial bodies or administrative officers have no greater right in this regard than courts. We understand that, in order to satisfy the requirements of the Constitution, it is not necessary that the notice must be the same in all cases, but the notice must be appropriate to the nature and character of the proceeding involved.

What is due process of law has never yet been defined. After the adoption of the Fourteenth Amendment to the federal Constitution, the Supreme Court of the United States, instead of attempting to define it in dealing with the subject, applied the rule of inclusion and exclusion, and that court has adhered to that rule or policy to the present time, leaving each case to be judged by what fundamental right, if any, has been omitted or invaded. Whether the right has been invaded depends, of course, upon the nature of the proceeding as much as on the method employed in putting it into execution. For example, the laying of a general tax is such a proceeding that the general laws of the state providing for boards to meet at definite times and hear grievances and complaints regarding the amounts of assessments and levies, impart sufficient notice to the taxpayer to appear and defend his rights. Winona & St. Peter Land Co. v. Minnesota, 59 U. S. 526.

With that situation before us, and in the absence of an adjudication bearing an exact analogy to the present case, we must necessarily proceed by the process of induction to determine whether or not the right claimed is protected by the due process clause of either the state or the federal Constitution. In this connection, and concerning the application of the rule of inclusion and exclusion, Mr. Hannis Taylor, in his exceedingly luminous treatise known as "Due Process of Law", in section 230 thereof, says:

"As there were no precedents to guide it, either in the jurisprudence of this country or any other, that court, at the beginning of its real work, mapped out the only course possible when it adopted in Davidson v. New Orleans, 96 U. S. 97, the famous rule of inclusion and exclusion under which the court, without defining the meaning of the phrase, due process of law, attempts in each case to ascertain its intent and meaning 'by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning on which such decisions shall be founded.' In attempting to interpret the real meaning of the mass of judge-made law thus piled up during a period of nearly 50 years, the text-writer is likewise forced to adopt a rule of inclusion and exclusion, under which he can only hope to lift up from a voluminous and rapidly growing literature such cases as are really leading, instructive and illustrative of the processes of reasoning the court habitually employs."

In section 244 of the same work, the author, in speaking of the effect of the agents of the Secretary of the Interior striking the name of a Creek freedman by blood from the rolls of the Five Civilized Tribes of Indians, and without notice, said:

"In United States ex rel. Turner v. Fisher, 222 U. S. 204, the court said: '1. Where, under the provisions of acts of Congress, and after a hearing, the names of relators were duly entered as Creek freedmen by blood on the rolls made and approved by the Secretary of the Interior, rights were acquired of which the freedmen could not be deprived without that character of notice and opportunity to be heard essential to due process of law.' Garfield v. United States, 211 U. S. 249. 2. Notice to the attorney of such freedmen, given a few hours before the hearing of a motion to strike their names, on the ground that their enrollment had been secured by perjury, was not such notice as afforded 'due process.' "

In the immediately succeeding section, the author, in quoting from the case of Ochoa v. Hernandez y Morales, 230 U. S. 139, pertaining to the prohibition against taking one man's property and giving it to another without an opportunity for a notice and hearing, extended the following quotation from the decision:

"Without the guaranty of 'due process' the right of private property cannot be said to exist, in the sense in which it is known

to our laws." The principle, known to the common law before Magna Carta, was embodied in that charter (2 Coke. Inst. 45, 50), and has been recognized since the Revolution as among the safest foundations of our institutions. Whatever else may be uncertain about the definition of the term 'due process of law', all authorities agree that it inhibits the taking of one man's property and giving it to another contrary to settled usages and modes of procedure, and without notice or an opportunity for a hearing."

The whole theory of our constitutional government, and that government which is the result of evolution of the common law of England, requires notice and an opportunity to be heard as a prerequisite to due process of law; and that notice must be given before substantial rights can be taken from the citizen.

In regard to notice and hearing, Mr. Rodney L. Mott, in his able work entitled "Due Process of Law," at page 208, says:

"The requirement of notice and hearing as a part of due process of law was a natural corollary of the idea that that phrase embodied the essential principles of the common law of England. The very close relationship between due process and the procedure at common law was stressed in opinion after opinion. This was but natural in view of the background of the early state courts, and the fact that the colonial courts had consistently proceeded according to it."

Commencing on page 214 of the same work, the distinguished author, in speaking of the **former** prevailing idea that due process was confined to judicial process, and that the established forms of judicial determination constituted due process, said:

"Furthermore, it was evident that there were certain kinds of decisions that could not be made by a regular judicial body although they may have vitally affected private rights. When it became evident that such bodies as road commissions often exercise tremendous power through their decisions, the weakness of the criterion became evident. The courts, as a result of this type of case, again searched through the common-law decisions and arrived at the conclusion that 'due process is not necessarily judicial process.' By this time it was evident that they were beginning to look to the inherent elements of justice in a determination rather than to the form by which that decision might be arrived at. It was then that the courts developed the doctrine of notice and hearing.

"In the eighteenth century, the English courts had insisted on the necessity of a notice and hearing in any determination of a quasi-judicial nature, some even declaring that it was guaranteed by natural right.

The North Carolina Court spoke of it in 1812, but it seems not to have been linked with due process until well toward the middle of the century."

"The rule thus became generally accepted that substantial rights of property could not be impaired without an opportunity being given to the defendant to present his case. As thus developed, this doctrine having been subsequently adopted by the United States Supreme Court, can now be regarded as one of the elements of the law of the land as regards procedure."

The only exception to the above regarding notice is stated by the author at pages 232, 233 and 234 of his treatise as follows:

"There are certain types of determinations, however, in which a notice or hearing, or even both, may be dispensed with entirely. If it can be shown that there is nothing on which a notice and hearing would be appropriate and that the determination is purely a ministerial one, the courts have pointed out that to insist on this formality merely delays justice and is of no real value in protecting private rights. This was decided first in cases of the levy of specific taxes where there was no question of value, and subsequently when licenses were to be revoked due to events beyond the control of the board, or land titles were to revert to the state when those purchasing public lands defaulted in their payments. The second class of cases not requiring notice and hearing are those in which the state has an arbitrary or proprietary control over the matter."

In the concluding paragraph to the chapter on this subject, the author makes the following appropriate remarks:

"Throughout the entire development of administrative law, there has been the conflict between administrative necessity and expediency and the innate propensities of the courts to respect and preserve, if possible, the substance of judicial protection, even though in some cases its forms had to be foregone. Even in many of those cases, where it was said that notice and hearing was not an absolute necessity, the courts have so construed the statutes or exercised their constitutional prerogatives as to give the substance of that protection. In spite of its limitations, dictated by administrative convenience, notice and hearing is still one of the most important elements in the procedure required by due process." Citing Regal Drug Corp. v. Wardell, 260 U. S. 386, 67 L. Ed. 318; Postal Tele. & Cable Co. v. Newport, 247 U. S. 464, 62 L. Ed. 1215, and Ex parte Sayles, 108 Okla. 29, 233 Pac. 186."

That the term "due process of law" is not restricted to proceedings in courts, Justice McKenna, of the Supreme Court of the United States, in an illuminating opinion in

the case of Ballard v. Hunter, 204 U. S. 241, said:

"A precise definition has never been attempted. It does not always mean proceedings in court. Den. ex dem. Murray's Lessee v. Hoboken, 18 How. 272; McMillen v. Anderson, 95 U. S. 37. Its fundamental requirement is an opportunity for a hearing and defense, but no fixed procedure is demanded. The process or proceedings may be adapted to the nature of the case. Dent v. West Virginia, 129 U. S. 114; Lent v. Tillson, 140 U. S. 316; Hagar v. Reclamation District, 111 U. S. 701; Iowa Central R. R. Co. v. Iowa, 160 U. S. 389."

The same writer, in speaking of the decision of that court, in the case of Davidson v. New Orleans, 96 U. S. 97, and in quoting Justice Bradley's concurring opinion in that case, said:

"That, in judging what is 'due process of law', respect must be had to the cause and object of the taking, whether under the taxing power, the power of eminent domain, or the power of assessment for local improvement, or none of these; and if found to be suitable or admissible in the special case, it will be adjudged to be 'due process of law', but if found to be arbitrary, oppressive and unjust, it may be declared to be not 'due process of law'."

In the case of Castillo v. McConnico, supra, the Supreme Court of the United States, in holding a notice by publication for 30 days, pursuant to a statute, to be sufficient notice to constitute due process of law, said:

"Conceding that a sale to enforce taxes made without notice, actual or constructive, would be a want of due process of law, it is yet obvious that the publication for 30 days required by the state law was sufficient notice to constitute due process of law. * * *"

So, it may be said that it is now definitely settled · that, in order to divest an owner of land of his title or interest therein, a necessary and fundamental prerequisite to the obtaining of such deed, and foreclosing the owner's right to redeem, is some appropriate character of notice. The notice may be either actual or constructive, according to the exegencies of the case.

Pertaining to the right to notice, we think all that has been said regarding the right of the legal or technical owner of the premises to notice of an application for a tax deed, applies with equal force to the person holding a valid recorded mortgage thereon, or a mortgage of which the tax certificate holder has actual notice, whether recorded or not.

Much has been written and much legislation has been advanced in an attempt to define a present day mortgage. Many of the attempted definitions have been the subject of no small amount of criticism. For example: By the Code of Civil Procedure of California, a mortgage is defined as a "contract by which specific property is hypothecated for the performance of an act, without the necessity of a change of possession." (Calif. Civ. Code, sec. 2920; Comp. Laws, N. D. 1913, sec. 6725). This definition omits the element of a conveyance, and is subject to that criticism.

In this connection, the authors of Jones on Mortgages (8th Ed.) vol. 1, p. 21, say:

"How, then, may a mortgage at the present day be defined? Baron Parke, speaking of the mortgagor, said: 'He can be described only by saying he is a mortgagor.' In the same way it may be said that most accurate and comprehensive definition of a mortgage is that it is a mortgage. As remarked by Lord Denman, 'It is very dangerous to attempt to define the precise relation in which mortgagor and mortgagee stand to each other, in any other terms than those very words.' A definition given by Kent, and one which has been quoted, adopted, or approved in a great many cases, is that, 'A mortgage is the conveyance of an estate by way of pledge for the security of a debt, and to become void on payment of it'. A definition broad enough to cover any view of the transaction, and any form of it, can only be that it is a conveyance of land as security."

The Supreme Court of Kansas, in Hoyt v. Union National Bank, 115 Kan. 167, 222 Pac. 127, defines a mortgage as "a defeasable conveyance to secure the payment of a debt." The Kansas law and our law regarding the nature of a mortgage is the same. Under our law, regardless of the fact that the conveyance can never become absolute, if there is a defeasance, express or implied, and the mortgagee's title must await the process and results of foreclosure, and commences only when or in case he purchases the property at a foreclosure sale, or acquires it by an absolute conveyance, yet a mortgage is a distinct property right, and, in point of fact, by virtue of a contract, whether in the form of an absolute conveyance or otherwise, the mortgagor's right in the premises after the execution of the mortgage thereon is nothing more than an equity of redemption together with the right of possession, notwithstanding in strictly legal classification he is the holder of both the legal and equitable title.

Mortgages have become such an import-

ant part of our modern economic system that it may be safely said that the sum total of mortgages in existence exceeds more than one-half of the nation's wealth. Or, that it may be conjectured that more than one-half of the wealth of the nation is represented by mortgages.

It is common knowledge that, in nearly all instances where real estate is mortgaged, the mortgage, at some period of its existence, represents the major part of the value of the property. Therefore, other than sentiment, the mortgagee's actual or monetary interest in the corpus of the property is usually greater than that of the mortgagor. We do not mean that the mortgagee has an estate in the land, or that the title is vested in him, but he has a property right in the premises, the value of which is in proportion to the amount which the mortgage bears to the value of the property. It has been held by this court that:

"The right of the mortgagee to have the mortgaged premises subjected to the payment of its debt **is a vested property right within the meaning of constitutional provisions.**" National Bank of Commerce v. Jones, 18 Okla. 555, 91 Pac. 191, 11 Ann. Cas. 1041, 12 L. R. A. (N. S.) 310; 19 R. C. L. 389. (Emphasis ours.)

The exact question presented here has never been decided by any appellate court in this country. There are four cases, two from one state and two from other states, holding that a mortgagee was not entitled to notice of an application for a tax deed. Two of these cases are from the Supreme Court of Illinois, one from the New York courts, and one from the Supreme Court of Iowa. The cases are Glos v. Evanston, etc., County Bldg., etc., Asso., 186 Ill. 586, 58 N. E. 374; Smyth v. Neff, 123 Ill. 310, 17 N. E. 702; Hall v. Guthridge, 52 Iowa, 408, 3 N. W. 475; and Becker v. Howard, 66 N. Y. 5.

We have carefully examined each of the foregoing decisions. The question presented in each was not the constitutionality of the statute, or that the acts of the public officers violated the provision of the Constitution regarding due process of law; but the only question presented and decided was whether or not the language of the particular statute was comprehensive enough to include a mortgagee. For instance, the Illinois statute provided "notice to the owners and parties interested in the land" or lot sought to be obtained under a tax deed. The two cases referred to held that the words, "or parties interested," added nothing to the statute, and that the statute was the same as if these words had been omitted;

that the Legislature having failed to designate the "persons interested" or "parties interested" in land sold for taxes in special assessments other than the owners or persons in possession, the purchaser was not required to serve any notice of his purchase on the person holding a mortgage upon the land, in order to entitle himself to a tax deed.

The same question arose and the same question only was considered in the case of Hall v. Guthridge, supra, by the Supreme Court of Iowa. The New York statute was different in terms but the decision in the case of Becker v. Howard was based solely upon the language of the statute, and no mention whatever was made concerning any limitation or right inuring under the Constitution.

In this connection, it may be of interest to note from the preceding discussion of the great panorama of the decisions, that at the time the Iowa case and the pioneer Illinois case and the New York case were decided, which was a short time after the Civil War, due process of law, though not a new principle in American constitutional government, was not well understood, and was not appreciated and applied as it is today. It was seldom in terms applied except to restrain judicial procedure clearly contrary to established forms. As we have previously attempted to show, the matter was considered as almost exclusively belonging to the steps in judicial procedure, and was considered more in the nature of a moral restraint upon legislative bodies than an absolute prohibition against arbitrary legislation.

Mr. Mott, in his work on "Due Process of Law," at pages 189 and 191, states that the principle was not fully recognized until the first decade of the 20th century, or about 20 years ago. On page 189, he says:

"Gray, in his Limitations of the Taxing Power (1906), caught the significance of the situation. He pointed out that due process required just classification and jurisdiction in taxation as well as public purpose and procedure, and he took particular pains to demolish the time-worn distinction between procedural and substantive rights. Three years later the wide application of due process of law as limitation on the powers of the states was recognized by Page and Jones in regard to taxation, and by Nichols in respect to eminent domain."

At page 190, he states that "it is believed that Professor Hall produced in 1910 the first general text-book on constitutional law in which the wide scope of due proc-

ess was recognized." As illustrating the lack of consideration given this important subject, he further shows that, notwithstanding the numerous annotations of the various state and federal Constitutions at different periods, the first one to classify the cases under due process was published in 1928. At another juncture in this chapter, the author says:

"Even as late as 1910, Reeder made a spirited plea for the restriction of the scope of due process to procedural rights, and declared that it had no relation to substantive protections."

The author further states that:

**"Had it not been for stern economic conditions, it is not probable that the legal profession would have goaded the courts into a recognition of the wide scope of the Fourteenth Amendment.** With the courts won over to the broader interpretation, it was but a matter of time until the commentators would follow." (Emphasis ours.)

Even in that exhaustive work on the Constitution of the United States by Watson, published in 1910, but little recognition of the wide scope of due process was given.

It will be thus seen that the principle of due process of law, although it had its origin in the Magna Carta, is a field which was recently developed, or perhaps we may say it is still in process of evolution.

Many of the states expressly provide by statute that, in order to cut off the rights of a mortgagee in lands conveyed under a tax deed, it is necessary to serve him with notice of the intention to apply for a tax deed. The states of New York and North Dakota have had a statute of that nature for a number of years. The Dakota statute was amended in 1919 to provide that the mortgagee, to be entitled to notice of an application for a tax deed, must file with the county auditor (perhaps an officer equivalent to our county clerk), the mortgagee's name and address, and a request for a notice of an application for a tax deed.

Upon first impression, these two cases from Illinois and the early New York and Iowa cases holding that a mortgagee is not entitled to notice, are some authority for that proposition; but from what we have said in respect to the scanty consideration and lack of force given to due process in connection with the acts of quasi judicial and administrative officers, and that the constitutionality of the statutes or the character of the proceedings independent of the statute were not considered or drawn

into question, the cases lose their force as precedents upon the point presented and considered here, which is whether the omission to give some character of notice to the mortgagee when the property covered thereby is sought to be forfeited for an inconsiderable sum and acquired under a tax deed, amounts to depriving the mortgagee of his property right without due process of law. In view of the now well-recognized scope of due process of law, we think the question hardly open to meritorious debate. That the acquisition of the tax deed in the case at bar, without the tax certificate holder serving some character of notice on the mortgagee, that is, such notice as the statute prescribes for a nonresident, the mortgagee being a nonresident, was an omission which operated to deprive plaintiff of his property without due process of law, and was an invasion of a right safeguarded to him under section 7 of art. 2 of the Constitution of this state and the Fourteenth Amendment to the federal Constitution.

This case clearly illustrates the necessity for the application of the constitutional provision that no person shall be deprived of his property without due process of law. The proceedings show that the plaintiff held a mortgage on the 90 acres of land in the aggregate sum of about $4,800. It is indicated in the brief of defendant in error that the mortgage indebtedness was far in excess of the value of the land, and the fact that the mortgagee was the purchaser at the sheriff's sale for an amount less than the mortgage indebtedness, tends to sustain that contention. The owner of the land, when served with the notice of the application for a tax deed gave the matter no particular concern or thought. He did not notify the mortgagee, and the mortgagee did not learn of the issuance of the tax deed until some considerable time thereafter.

Judgment in foreclosure had been previously entered against the owner of the land, and the tax deed was issued after the judgment in foreclosure, and before the order of sale. When he did learn of the execution of the tax deed, he offered the tax title holder, or his grantee, the amount of taxes, together with all interest and penalties. and some additional for his trouble and expense. The offer was refused. There is no question but that had the mortgagee learned of the application for a tax deed, he would have speedily paid these taxes, together with all interest or "penalties." This is evidenced by the fact that for the

years of 1923, 1924, and 1925, the plaintiff (the mortgagee) paid the taxes on this land. He paid the taxes for the year preceding the issuance of the tax deed and for the succeeding years up to the time of bringing this action.

From what we have said, it therefore follows that section 9749 of Comp. Stat. 1921, in so far as the same purports to extinguish the rights of a mortgagee of the premises without his having been first served with a notice, actual or constructive, of the application for a tax deed, is unconstitutional and void. The statute is valid so far as it goes; but in a proceeding under it, where no further or other notice is served than that which the statutes prescribe, in case there is a valid and unsatisfied mortgage on the premises, the rights of the mortgagee are undisturbed by the execution of the tax deed. If the tax certificate holder desires to cut off the rights of the mortgagee, he must give some reasonable notice, which, in the absence of a statute prescribing the character of it, must be the same as is required to be given to the owners of the premises.

Our law authorizing the sale of land for taxes is in its nature forfeiture statutes. The decisions recognized that fact as evidenced by the text, and numerous citation of cases in 37 Cyc. at pages 1542 to 1551, inclusive. It is a rule of universal application that a statute or constitutional provision directing a penalty of the harshest character, to wit, a forfeiture, will necessarily be subjected by the court to a close criticism and a strict construction. One Hudson Automobile v. State, 77 Okla. 130, 187 Pac. 806. In this connection, it is stated in 37 Cyc. at page 1548, as follows:

"An intention to work an absolute and irredeemable forfeiture of delinquent lands will not be inferred if the statute is susceptible of any milder construction; * * * while, on the other hand, statutes giving relief from forfeitures are to be construed liberally in favor of the taxpayer."

It is not the purpose of the law to forfeit one's property unless the taxes cannot be collected in some reasonable manner without such result. This is evidenced by the fact that the law makes ample provision for redemption by the persons interested, including mortgagees, and requires the service of personal notice of the application for a tax deed upon the resident owner or owners. It is to be presumed that, except in cases where the owner has no actual interest in the land, such as the present case, he will pay the taxes and protect the land against the tax deed. Therefore, if the statutes were designed to aid and abet or encourage the forfeiture of land for nonpayment of taxes, instead of being statutes to compel the payment of taxes, such statutes fail to accomplish their intended purpose, because it is certainly to be presumed that the persons interested, who are notified of an application for a tax deed, will make the redemption. The purpose of the statute is to remunerate the tax certificate holder by permitting him to collect a high rate of interest and penalties, and, as a last resort, to enforce that right by a forfeiture to him of the land. The interest of the state is not to take one man's property and give it to another for a paltry or inconsequential sum, either with or without notice. Its purpose in assessing, levying, and collecting taxes upon land is to collect the taxes if practicable without the most drastic of all methods. A mortgagee being an interested person, and having a property right which the Legislature cannot take away, there is no good reason, legal or otherwise, why he should not be notified of an application for a tax deed upon property in which he may, in point of fact, have the primary and paramount interest.

In the case at bar, the tax deed not being void, as against the owner of a legal title to the land at the time the tax deed was issued, the grantee in the tax deed is entitled to be compensated for the amount of taxes which he has paid on the land, together with the prescribed interest and penalties up to the time he was tendered the amount by plaintiff. With this modification, which the trial court is directed to ascertain, the judgment of the trial court is hereby affirmed.

TEEHEE, HERR, REID, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See "Taxation," 37 Cyc. p. 1400, n. 20.