ANDERSON, Trustee, v. BARR et al.

No. 26198. Sept. 8, 1936.

Rehearing Denied Dec. 22, 1936.

Charles P. Gotwals, John T. Gibson, Wm. A. Killey, and James D. Gibson, for plaintiff in error.

Forrester Brewster, for defendants in error.

PER CURIAM. This action was instituted in the district court of Muskogee county by Jay A. Anderson, trustee, to foreclose two real estate mortgages as against the De-Camp Consolidated Glass Casket Company, a corporation, and others. F. E. Barr intervened and by his intervening petition sought

to foreclose a mortgage or deed of trust upon the same real estate and fixtures thereon.

Some time prior to February 2, 1920, there was organized the Mid-West Glass Casket Company, a corporation. On February 2, 1920, said company issued a series of notes or bonds and secured them by a first mortgage or deed of trust upon real estate and fixtures thereon. One F. E. Barr, defendant in error, purchased a number of the bonds so issued and secured. The Mid-West Company defaulted in the payment of said bonds and M. Board, trustee, as designated in the mortgage or deed of trust, recovered a decree of foreclosure foreclosing the mortgage or deed of trust on September 8, 1923. The order of sale under that decree was issued March 31, 1924, but at the request of attorney for the trustee, a sale of the mortgaged property was not had.

Prior to November 16, 1923, there was organized the DeCamp Consolidated Glass Casket Company, a corporation. On November 16, 1923, the Mid-West Company executed a warranty deed to the DeCamp Company, conveying the mortgaged property, subject to the mortgage. The DeCamp Company took over and operated the Mid-West Company.

December 10, 1925, the DeCamp Company wrote defendant in error that it intended to raise money by executing a new mortgage and asked him to forward his bonds for full payment thereon.

June 25, 1926, the DeCamp Company mailed defendant in error an interest payment and asked him to apply it on his Mid-West bonds. The credits were indorsed on the bonds.

September 1, 1926, and March 1, 1928, the DeCamp Company executed a first and second mortgage, respectively, to Jay A. Anderson, trustee, plaintiff in error. These mortgages covered the same property as did the mortgage or deed of trust executed for the security of the bonds held by defendant in error F. E. Barr. The first mortgage contained this provision:

"It is understood that part of the money to be secured by this mortgage is to be used for the payment of a prior lien against the property herein described, and this mortgage is, therefore, executed and delivered subject thereto."

The second mortgage contained this provision:

"It is understood that this mortgage is executed and delivered subject to existing liens now of record in each of the aforementioned states."

July 29, 1926, it appears that defendant in error was requesting new paper for his Mid-West bonds, and the DeCamp Company did assume and agree to pay the indebtedness as evidenced by a letter and promise in writing of that date.

June 1, 1931, the DeCamp Company made another interest payment on the bonds held by defendant in error and indorsed same on said bonds.

June 13, 1931, the DeCamp Company indorsed on each of the bonds held by defendant in error:

"The undersigned, DeCamp Consolidated Glass Casket Company, a corporation organized under the laws of the State of Delaware, hereby recognizes the within bond as having been legally issued, and now in full force and effect.

"Dated this 13th day of June, 1931.
"DeCamp Consolidated Glass Casket Company,
"(Signed) By J. W. DeCamp, President.
"Attest:
"(Signed) E. C. Pratt, Secretary.
"(Seal)"

By leave of court, defendant in error amended his intervening petition so as to set out therein the facts relating to the judgment recovered on the bonds and mortgage September 8, 1923.

The DeCamp Consolidated Glass Casket Company, a corporation, wholly defaulted.

The lower court rendered judgment adjudging F. E. Barr to have a first and prior lien and ordering same foreclosed. Jay A. Anderson, trustee, was adjudged to have liens junior only to F. E. Barr's first lien. This appeal is prosecuted to reverse that portion of the decree adjudging F. E. Barr's lien prior and superior to that of Jay A. Anderson, trustee.

Jay A. Anderson, plaintiff in error, contends that the cause of action upon the bonds and the first mortgage or deed of trust, executed by the Mid-West Company, became merged in the decree of foreclosure rendered in favor of M. Board, trustee, against the Mid-West Glass Casket Company September 8, 1923. That said judgment became dormant, under section 442, O. S. 1931, long prior to the inception of the present action, and that neither partial payment, acknowledgment in writing, nor any other estoppel could revive the dormant judgment.

Plaintiff in error misconceives the nature and effect of a mortgage and a foreclosure

suit thereon. As was said by Commissioner Hall, in the case of Foster v. Marshall, 141 Okla. 246, 284 P. 882:

"Much has been written and much legislation has been advanced in an attempt to define a present day mortgage. Many of the attempted definitions have been the subject of no small amount of criticism. For example: By the Code of Civil Procedure of California, a mortgage is defined as a 'contract by which specific property is hypothecated for the performance of an act, without the necessity of a change of possession.' (Civ. Code Cal., sec. 2920; Comp. Laws, N. D. 1913, sec. 6725). This definition omits the element of a conveyance, and is subject to that criticism.

"In this connection, the authors of Jones on Mortgages (8th Ed.) vol. 1, p. 21, say:

" 'How, then, may a mortgage at the present day be defined? Baron Parke, speaking of the mortgagor, said: "He can be described only by saying he is a mortgagor." In the same way it may be said that the most accurate and comprehensive definition of a mortgage is that it is a mortgage. As remarked by Lord Denman, "It is very dangerous to attempt to define the precise re'ation in which mortgagor and mortgagee stand to each other, in any other terms than those very words." A definition given by Kent, and one which has been quoted, adopted, or approved in a great many cases, is that, "A mortgage is the conveyance of an estate by way of pledge for the security of a debt, and to become void on payment of it." A definition broad enough to cover any view of the transaction, and any form of it, can only be that it is a conveyance of land as security.'

"The Supreme Court of Kansas in Hoyt v. Union National Bank, 115 Kan. 167, 222 P. 127, 130, defines a mortgage as 'a defeasible conveyance to secure the payment of a debt.' The Kansas law and our law regarding the nature of a mortgage is the same. Under our law, regardless of the fact that the conveyance can never become absolute, if there is a defeasance, express or implied, and the mortgagee's title must await the process and results of foreclosure, and commences only when or in case he purchases the property at a foreclosure sale, or acquires it by an absolute conveyance, yet a mortgage is a distinct property right, and, in point of fact, by virtue of a contract, whether in the form of an absolute conveyance or otherwise, the mortgagor's right in the premises after the execution of the mortgage thereon is nothing more than an equity of redemption, together with the right of possession, notwithstanding in strictly legal classification he is the holder of both the legal and equitable title.

"Mortgages have become such an important part of our modern economic system that it may be safely said that the sum total of mortgages in existence exceeds more than one-half of the nation's wealth; or that it may be conjectured that more than one-half of the wealth of the nation is represented by mortgages.

"It is common knowledge that in nearly all instances where real estate is mortgaged, the mortgage at some period of its existence represents the major part of the value of the property. Therefore, other than sentiment, the mortgagee's actual or monetary interest in the corpus of the property is usually greater than that of the mortgagor. We do not mean that the mortgagee has an estate in the land or that the title is vested in him, but he has a property right in the premises, the value of which is in proportion to the amount which the mortgage bears to the value of the property. It has been held by this court that: 'The right of the mortgagee to have the mortgaged premises subjected to the payment of its debt **is a vested property right within the meaning of constitutional provisions.'** National Bank of Commerce v. Jones, 18 Okla. 555, 91 P. 191, 12 L. R. A. (N. S.) 310, 11 Ann. Cas. 1041; 19 R. C. L. 389." (Emphasis ours.)

Under the old chancery system, it was considered that a mortgage was a conveyance of the title to the land and the failure to pay the bond on the due date terminated the condition subsequent by which the title could be revested in the mortgagor. In order to cut off the equity of redemption the mortgagee presented his bill for a strict foreclosure of the mortgage, and in the decree upon that bill the court named a day prior to which the mortgagor might redeem, and that upon his failure to do so he should thereafter be forever foreclosed of his equity of redemption, and all right, title and interest in the lands. The suit in foreclosure only allowed an added period within which the mortgagor might still redeem, and resulted in a reconveyance of the legal absolute title vested in the mortgagee. The important point is that the "decree" did not change the title or interest of the parties.

In Oklahoma, where the least that can be said is that the mortgage is only a lien upon the land, the mortgagee's remedy is to obtain a decree directing the property to be sold and providing for the application of the proceeds to the debt. (Section 424, O. S. 1931.)

Yet in Oklahoma, as at common law, it is the sale and the deed and these alone that convey the **property right,** interest or title of the mortgagee and mortgagor. It is the sale

and deed and not the decree that gives to the mortgagee the fruits of his lien. It is the lien that gives to the mortgagee the right to have the specific property sold and the proceeds applied. The decree neither adds nor subtracts from the right; it only aids in the enforcement of it.

Until the sale and deed nothing has changed; the mortgagor remains tne owner of the equity of redemption or fee title, and is entitled to the benefits of the land and the mortgagee is still only a lienor.

Upon the rendition of the decree of foreclosure the court merely holds that there is a good and valid mortgage lien, that there is no valid defense thereto, and that the mortgagee is entitled to enforce his lien by a sale of the mortgaged land. The court does not by a decree of foreclosure weigh the lien as against the debt. A common denominator is sought and is found by dissolving the lien into the same form and substance of which the debt is made. This dissolution is accomplished only by a sale and deed. The decree itself does not dissolve or extinguish the lien.

It is thus seen that the mortgage lien does not merge into the decree of foreclosure. It existed prior thereto and the decree neither creates nor extinguishes it, but only aids in the enforcement of it.

The term "foreclosure" means: "To shut out; to bar, to destroy an equity of redemption." (Bouvier's Law Dictionary, vol. 1, p. 1256.) The modern significance of the term "foreclosure," as applied to mortgages, is that of a sale under a judgment of foreclosure and not the judgment itself. Sichler v. Look, 93 Cal. 600, 29 P. 220.

Who or what has been foreclosed until there has been a sale? Nothing has been cut off from the mortgagor until there has been a sale. The mortgagor's right to pay and keep the land has not been barred until there has been a sale. Until the sale the mortgage as a property right created by contract remains quite as unaffected as did the title of the mortgagee under the old chancery practice.

The decree so far as it touches the land is no more than a direction that the interest and rights of all parties be sold; it is the sale that changes any such rights or interest.

A mortgage lien is not merged into a decree of foreclosure, nor is it extinguished by the mere rendition of a decree of foreclosure. It is extinguished only by a sale.

Wyoming Building & Loan Ass'n v. Mills Const. Co. (Wyo.) 269 P. 45; Freeman on Judgments, section 585.

The plaintiff in error contends that the debt due defendant in error was lost in the judgment of foreclosure, and that said judgment has been dormant long prior to the inception of this action, under section 442, O. S. 1931. It is not necessary in passing on this contention to decide whether a decree of foreclosure is that kind of a judgment which would become dormant unless execution were issued once in every five years. However, there is good reason and authority, for the view that section 442, O. S. 1931, does not apply to a decree of foreclosure.

Ten years elapsed from the last execution on the judgment originally obtained on the bonds held by defendant in error and the fiing of the present action by him. Plaintiff in error insists that five years were enough to bar any claims of defendant in error. Yet as late as June 11, 1931, the DeCamp Company, being the principal obligor, recognized its former assumption of the debt and promise in writing to pay, by paying interest on the bonds, and indorsing thereon "recognizes the within bond as now in full force and effect."

It would be shocking to equity and good conscience to permit the DeCamp Company to come into a court of equity and now assert that the bonds are no longer in existence. And since the plaintiff in error is not an innocent purchaser, but rather took his mortgages expressly subject to the former mortgage, he must stand in the shoes of his mortgagor, the DeCamp Company. Equity and law decree that he must remain a shadow of his mortgagor, so far as the first mortgage is concerned, until the first mortgage has been discharged or released.

While a judgment was rendered on the bonds held by defendant in error September 8, 1923, in a suit for his benefit by the trustee, M. Board, the bonds held by him were never surrendered. The intangible thing called debt has never been paid. It was first evidenced by the original bonds. On September 8, 1923, the evidence of it acquired a new form, a judgment.

While this judgment was in full force and effect, defendant in error was insisting upon payment, or, in the alternative, new bonds, when on July 7, 1926, the De-Camp Company gave defendant in error a written instrument in which he was advised that it had assumed and agreed to

512

pay the debt and promised therein to do so. Then on June 11, 1931, it indorsed upon the bonds "recognizes the within bond as being in full force and effect," and made an interest payment thereon. The acts of the DeCamp Company on the two last-mentioned dates, as set out thereunder, created new evidence of the debt. The defendant in error did forego his rights under the judgment and accept the bonds, together with the indorsement made thereon and the assumption of the debt and promise to pay, as the new evidence of his debt.

Plaintiff in error argues that there was no consideration for the assumption and promise to pay by the DeCamp Company. This argument is without merit.

In this case the defendant in error was demanding payment, and the DeCamp Company assumed the debt and gave him a new promise in writing to pay the **bonds.** Since that time the DeCamp Company and defendant in error treated the bonds as the new evidence of the debt. All acts of both parties since that time clearly establish their intent to substitute the bonds in lieu of the judgment. The giving up of his legal rights under the judgment constitutes a sufficient consideration for the assumption and promise to pay by the DeCamp Company.

It is established law that an extension of time for the payment of indebtedness, or forbearance from the enforcement of legal rights which the obligee is entitled to under the law, constitutes sufficient consideration for a new promise to pay a like amount to the obligee granting such extension or forbearing such legal rights. Wiswell v. Giroux (Colo.) 197 P. 759; Sawyer v. Bahnsen, 102 Okla. 41, 226 P. 344; Hays v. Smith, 65 Okla. 113, 164 P. 470; Lee v. Oklahoma State Bank of Ponca City, 119 Okla. 72, 247 P. 983; Hudson-Houston Lumber Co. v. First State Bank of Ringling, 132 Okla. 125, 269 P. 1054; section 9440, O. S. 1931.

Oklahoma has always followed the rule of law to the effect that a mortgage secures the debt or obligation, and therefore no change in the form of evidence can operate to discharge the mortgage. Lincoln Nat. Life Ins. Co. v. Rider, 171 Okla. 262, 42 P. (2d) 842; Unger v. Shull, 154 Okla. 277, 7 P. (2d) 881; First Nat. Bank v. Hendrick, 135 Okla. 260, 275 P. 314.

It follows that the mortgage did not merge into the decree of foreclosure of September 8, 1923, but has remained as a lien upon the real estate involved herein.

The mortgage was given and remains as given, as security for the payment of the intangible thing called debt. That debt has never been paid. Since July 29, 1926, the evidence of that debt has been in the form of the bonds sued on, together with the assumption agreement and indorsements made on said bonds. Such evidence of the debt has been kept alive by payment thereon and acknowledgments and promises to pay in writing by the principal obligor. Section 107, O. S. 1931.

The judgment of the lower court should be affirmed, and it is so ordered.

The Supreme Court acknowledges the aid of Attorneys Curtis P. Harris, Gordon Fuller, and Streeter B. Flynn in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Harris and approved by Mr. Fuller and Mr. Flynn, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, BUSBY, and PHELPS, JJ., concur.