SPAULDING *v.* HALEY.

Opinion delivered December 18, 1911.

1. HOMESTEAD—RIGHT OF WIDOW AND CHILDREN.—The homestead right of the widow or children of a deceased resident of the State is a derivative one, and must be the same as that which the husband and father could have claimed in his lifetime.   (Page 298.)

2. SAME—WHETHER URBAN OR RURAL.—Where land jutted into the outskirts of a village but was used entirely for agricultural purposes, although part of it had been divided into lots by a prior owner, without making a plat or subdivision of it, a finding of the chancellor that it constituted a rural, and not an urban, homestead will not be set aside. (Page 299.)

3. SAME—EQUITABLE ESTATE.—The widow and minor children of a deceased resident can claim a homestead in lands occupied by the deceased resident under a contract for the purchase thereof, a portion only of the purchase money having been paid.   (Page 300.)

4. DOWER—EQUITABLE ESTATE.—Where a deceased husband was in possession of land at his death under a contract of purchase, and having paid a portion of the purchase money, his widow was entitled to dower therein.   (Page 301.)

Appeal from Randolph Chancery Court; *George T. Humphries,* Chancellor; affirmed.

*T. W. Campbell,* for appellant.

1. The widow is not entitled to homestead in the land conveyed by Towle.   C. E. Spaulding held the lands under contract of purchase only.   The word "owner" used in the statute, Kirby's Digest, § 3882, means one holding an absolute title in fee simple.   21 Ore. 339; 201 Ill. 292; 30 N. Y. 1040; 112 Ala. 539; 113 Ga. 357; 116 Ga. 942; 106 Cal. 355; 6 Words & Phrases, 5151; 6 Hun (N. Y.) 553; 88 Wis. 672; 6 Tex. 303; 25 Pac. 415; 2 O. Dec. 391.

2. If the widow is entitled to homestead at all, it can not exceed one acre.   Art. IX, § 5; Webster's Dict. "Village;" Black's Law Dict.; Anderson's Law Dict.; 71 Ill. 569; 35 L. R. A. 396; 74 S. W. 67; 62 Ark. 140.

3. The widow is not entitled to dower in the Towle lands. Our statute, with reference to the kind of estate necessary to be vested in the husband in order to entitle the widow to dower, is simply declaratory of the common law, *i. e.* that the widow has dower in lands in which her husband was seized of an estate of inheritance. 2 Dembitz on Land Titles, 811; Kirby's

Digest, § 2687; 14 Cyc. 910; 132 Ill. 467; 78 Ill. 600; 110 Ky. 841; 122 Mich. 125; 5 Blackf. 406; 49 Mo. 206; 15 Ga. 102; 29 Pa. 71; 64 Ga. 320; 18 Ky. 125; 86 Mass. 187.

*Witt & Schoonover,* for appellee.

1. Spaulding held an equitable estate in the Towle's lands, an estate that would descend by inheritance, and support a homestead right. Thompson on Homestead, § § 170, 171, 172; 21 Cyc. 508; 9 Am. & Eng. Enc. of L. (1 ed.) 426; 10 Dec. Dig. 350, § 88; 25 Cent. Dig. c. 2252, § 126; 40 Ark 74. The word "owner" has a broader meaning than that contended for by appellant, and includes in its meaning an equitable as well as a legal owner. Anderson's Law Dict. p. 741.

2. The widow is not limited to one acre for a homestead. The evidence is not sufficient to show that Kingsville is a village or town within the meaning of the homestead laws of the State. 51 Ark. 527.

3. Spaulding's equitable estate being one of inheritance, the widow was entitled to dower. Kirby's Digest, § 2687; 26 Ark. 368; 1 Henning & Munford 91; 1 Jones, N. C., 430; 55 Ark. 225; 5 Am. & Eng. Enc. of L. (1 ed.) 896, note; 31 Ark. 580.

McCULLOCH, C. J. This case involves a controversy between the widow and the children of C. E. Spaulding, deceased, as to the right of the widow to claim homestead and dower in lands of the deceased husband and father. For several years before his death in the year 1904, C. E. Spaulding owned and occupied as his place of residence one acre of land, described as an acre lying in a square in the southeast corner of the northwest quarter of the northwest quarter of section 18, T. 19, R. 2 W., in Randolph County, Arkansas. This lot, it appears, was in the outskirts of an unincorporated village called Kingsville. Once upon a time this was a country village of some importance, having several hundred inhabitants and a postoffice, numerous stores of different kinds, a blacksmith shop and a church; but at the time of Spaulding's death it had dwindled down to a place where 12 or 13 families resided, and there was a postoffice and only two stores. About a year before his death Spaulding entered into a written contract with one Towle for the purchase of other lands adjoining the above-mentioned

lot which constituted his place of residence.   The tract so purchased contained 163 acres, described as the south half of the southeast quarter of section 7, and east half of the northwest quarter of section 18, T. 19, R. 2 W., containing 160 acres, and also "lots 5, 8, 12, 13, and north half of lot 18, south of Church Street in the town of Kingsville," and also "a strip or parcel of land lying east of lots 1, 6, and 7 north of Church Street." All of the lands so purchased were used entirely for agricultural purposes, and were situated entirely outside of the village. Spaulding entered into possession of said lands under his contract of purchase from Towle and paid a considerable portion of the purchase price, and died in possession thereof, leaving only a portion of the purchase price unpaid. Afterwards, Spaulding's widow paid the remainder of said purchase price, and Towle executed to the widow and children a deed conveying the lands to them "in such proportions and with such interests to each as by law they are entitled." The widow continued to occupy all the lands until this suit was instituted in the year 1910 by the children of C. E. Spaulding to cancel the conveyance from Towle to the widow and to have an accounting of the rents and profits of the land. The chancery court sustained the widow's claim of homestead, and set apart to her and the minor children 80 acres of the land, including the single acre originally owned by Spaulding, the three acres conveyed by Towle under the description of lot numbers, and 76 acres out of the east half of the northwest quarter of section 18, making 80 acres in all lying together. The court also allotted dower to the widow in the remainder of said lands.

The first question presented is, whether the lands actually occupied by Spaulding constituted an urban or a rural homestead. The Constitution provides that "the homestead in any city, town or village, owned and occupied as a residence, shall consist of not exceeding one acre of land, with the improvements thereon." Constitution of 1874, art. IX, section 5. The homestead right of the widow or children of a deceased resident of the State is a derivative one, and must therefore be the same as that which the husband and father could have claimed in his lifetime. The testimony in the case establishes the fact that Kingsville was a small village, probably within the meaning of the constitutional provision with reference to

homesteads. But it also shows that the whole of the property which the court allotted to the widow as a homestead was farm property, and that it jutted into the outskirts of the village. Some of the witnesses testify that it was not a town or village but merely an aggregation of houses occupied by a few families as a part of their several farms under circumstances like unto the facts with reference to the property of Spaulding. The chancellor found that this property was used entirely for agricultural purposes, and that it therefore constituted a rural, and not an urban, homestead. We can not say that this finding is against the preponderance of the testimony. The fact that a small proportion of the property had by the prior owner, Towle, been divided into lots does not necessarily affect the question at issue, for, as has been held by this court, the matter of surveying land into lots and blocks is not necessarily a controlling one in determining the character of the homestead. *First Nat. Bank* v. *Wilson*, 62 Ark. 140. In that case, Judge RIDDICK, speaking for the court, said:

"A case may be supposed where the corporate limits of a town or city have been extended beyond the actual extent of such urban community, so as to include territory altogether rural. On the other hand, there may be towns that have overgrown their corporate limits, so that one may dwell within the town, and still be outside the corporate limits. In such cases it may be that the courts would look to the facts to determine whether the homestead claimed was located in town or country, and not be altogether controlled by the corporate limits. * * * The fact that a homestead has not been divided into lots, and is used for farm purposes only, may be considered by the court in determining whether it is within a town, within the meaning of the Constitution."

Now, there is no testimony in this case to the effect that the three acres in question had ever been platted or actually divided into lots, nor that any plat of this land, or of any part of the town, had ever been placed upon the records of the county. The only evidence on that subject is that the three acres of land in question, as well as other portions of land lying within the bounds of the village, had been described in deeds by lot and block numbers. We do not think that merely describing land in a deed by lot and block numbers, without actually mak-

ing a subdivision or filing a plat thereof, necessarily amounts to a separation so as to cut it up into lots and blocks, nor does it determine the character of a homestead, whether urban or rural, though that fact may be considered as a circumstance in determining whether the land is held as an urban or as a rural home. Even platting land into lots, blocks and streets, and filing a plat with the county clerk, does not constitute such land urban property unless, in fact, situated within a town or village. *Clements* v. *Crawford County Bank,* 64 Ark. 7.

The case of *Orr* v. *Doughty,* 51 Ark. 527, is very similar to this. There the land claimed as a homestead was a tract containing 15 acres, and it jutted into the village of Newburg, in Izard County, Arkansas. The only difference between the cases is that in that case there had been no description by lot numbers of any part of the land, whereas in this case three acres of the land was described in a deed by lot numbers. The court, in disposing of the homestead claim, said:

"The tract had never been surveyed into blocks and lots or dedicated to village uses. It has been and is now used for agricultural purposes in connection with defendant's contiguous farm, and is therefore a country homestead within the meaning of the Constitution, notwithstanding the land upon which the defendant's residence is situated juts into the village."

The same may be said of the present case. The land was a farm, and was used entirely for that purpose. It constituted a rural homestead, notwithstanding the fact that the part actually resided upon jutted into the outskirts of the village.

The next question for our consideration is, whether the widow and minor children can claim homestead in lands occupied by the deceased husband or father under a contract for the purchase thereof, a portion only of the purchase money being paid. The decisions in other States are somewhat conflicting as to whether an equitable estate will support the homestead right, but we consider the question settled by decisions of this court (*Rockafellow* v. *Peay,* 40 Ark. 69; *Robson* v. *Hough,* 56 Ark. 621; *Stull* v. *Graham,* 60 Ark. 461) holding that an equitable estate is sufficient as a basis of the homestead claim. The right of the widow or children, being derivative, finds a like support in an equitable estate held as a homestead by the husband or father.

We are also of the opinion that under the laws of this State a widow is entitled to dower in lands to which her husband had only an equitable title. The statute provides that the "widow shall be endowed   *   *   *   of all the lands whereof her husband was seized of an estate of inheritance." Kirby's Digest, § 2687. This court has decided that an equitable estate is sufficient. *Kirby* v. *Vantrece,* 26 Ark. 368. Spaulding, being in possession of the land under his contract of purchase and having paid a portion of the purchase price, was the equitable owner of the land, and his widow was therefore entitled to dower therein. *Higgs* v. *Smith,* 100 Ark. 543.

The decision of the chancery court was not in conflict with the law herein announced, and the decree is therefore affirmed.