## FLETCHER v. FELKER et al.
### Civ. No. 537.

United States District Court
W. D. Arkansas, Fort Smith Division.
May 25, 1951.

756

Clayton N. Little and William H. Enfield (of Little & Enfield), Bentonville, Ark., for plaintiff.

E. M. Arnold, Arnold Adams, Little Rock, Ark., for defendants.

JOHN E. MILLER, District Judge.

## Statement

This is a suit for specific performance of a contract whereby the defendant, J. E. Felker, agreed to convey and cause to be conveyed certain real and personal property to the plaintiff upon the payment of a specified sum of money. From the various answers it appears that the defendants, W. B. Felker, Warren Felker, Florence Felker and Kate Morris, claim no interest in said property, and that it is owned by defendant, J. E. Felker; that defendant, J. E. Felker is willing to convey his interest in the property to the plaintiff in accordance with the contract, but that his wife, Grace Felker, refuses to relinquish her dower interest in the real property. Thus, the pleadings raise the question of the extent of the dower interest of defendant, Grace Felker, and the amount of abatement which should be made from the contract price to cover her interest.

The case came on for trial to the court on May 8, 1951. At the trial the attorneys for the defendants advised that the defendant, W. F. Felker, had died April 16, 1951; that defendant, J. E. Felker, had been appointed executor of his last will and testament; and that J. E. Felker, as executor, entered his appearance as a party defendant. Also, upon being advised that the defendant, J. E. Felker, was not present to testify, the court, after stating that it had received certain statements from physicians pertaining to the physical condition of said defendant, advised that the deposition of defendant, J. E. Felker, previously taken in anticipation of such an eventuality, would be admitted in evidence. Upon the completion of the presentation of the evidence, the case was submitted and taken under advisement and the court requested the attorneys for the respective parties to submit proposed findings of fact and conclusions of law, as well as supplemental briefs on points not covered in the pretrial briefs previously submitted by the attorneys. Said proposed findings, conclusions and briefs have now been received, and after having duly considered the testimony, exhibits thereto, the written stipulation and other stipulations entered into during the trial and all the briefs, the court makes and files the following findings of fact and conclusions of law, separately stated.

## Findings of Fact

### 1

Plaintiff, B. H. Fletcher, is and at the time this case was commenced was a citizen and resident of the State of Colorado. Defendants, J. E. Felker, Grace Felker, J. E. Felker, as Executor of the Estate of W. B. Felker, Warren Felker and Florence Felker, are and at the time this case was commenced were citizens and residents of the State of Arkansas. Defendant, Kate Morris, is and at the time this case was commenced was a citizen and resident of the State of Washington.

The amount in controversy herein exceeds the sum of $3,000.00, exclusive of interest and costs.

### 2

In the early 1900's defendant, J. E. Felker, was engaged in various unsuccess-

ful financial ventures involving a bank, railroad and insurance company. Numerous citizens in and around his home at Rogers, Arkansas, suffered financial reverses in these ventures, so that said defendant had reason to believe, and did believe, that there was a considerable amount of resentment against him in that area, and no doubt his contingent financial obligations were of considerable amount.

Around 1919 said defendant decided to go into the farming and livestock business and began to acquire land for that purpose. He testified that it was his desire to acquire a large tract of land in one valley of the White River, and due to the resentment against him caused by the various business failures mentioned above and the belief that if it became known that he was attempting to acquire a solid block of land in that area the price would be increased, he decided to take title to the various purchases in the names of his brothers and sister. Accordingly, from 1919 until 1923 or 1924 he purchased various tracts of land in the name of his sister, Mrs. Kate Morris, and his brother, W. B. Felker. Record title was taken in their names and so remained as of May 1, 1950. In 1935 and 1937 he purchased some land in his own name and in 1940 he purchased an additional tract of land in the name of his brother, Warren Felker. In all he purchased some 1700 acres of land, of which approximately 600 acres was cleared land available for farming or pasture, and the remainder was very rough, hilly land, suitable only for the growing of timber and grazing. In the case of all such purchases, he furnished the entire purchase price for the land, and after the purchase exercised full and complete control over the use of the land and paid all taxes thereon. He developed the land and gave it the name of "Birchwood Run Farms," and improved the same by building fences, a house, some barns, a silo, machinery sheds and other general improvements, and developed a herd of registered Hereford cattle. His brother, W. B. Felker, resided in the house on the farm until his death in April, 1951, but J. E. Felker at all times maintained actual control or the right to control the operation of the farm.

3

Around March 1, 1950, the plaintiff with a real estate man by the name of Harris talked to the defendant, Warren R. Felker, about the plaintiff purchasing the Birchwood Run Farms, including all equipment and livestock. Warren called J. E. Felker, who was in Little Rock at the time, and advised him of plaintiff's desire to make the purchase. J. E. Felker set the purchase price at $100,000.00 and told Warren R. Felker to enter into a contract for that amount if the plaintiff was interested. This was done. The contract was dated March 1, 1950, and signed by the plaintiff and J. E. Felker by Warren R. Felker. It was not introduced, but the evidence does reveal that it called for a purchase price of $100,000.00 and plaintiff made a deposit of $10,000.00. Also, apparently the transaction involved some lots in Lamar, Colorado. Between that date and May 1, 1950, the plaintiff and defendant, J. E. Felker, discussed the various terms of that contract but at no time did the plaintiff release the defendant Felker from the general and main obligation to sell the property to him for the sum of $100,000.00, and on May 1, 1950, it was decided to cancel the March 1, 1950, contract and substitute in lieu thereof a new one for the sale of the real and personal property listed therein.

At that time Mr. E. M. Arnold, the attorney of record for the defendants, was present, and as the result of the discussions between the defendant, J. E. Felker, and the plaintiff, the contract of May 1, 1950, was written by Mr. Arnold. The plaintiff did not know that it was necessary for the wife of any owner to sign the contract of sale. Neither the defendant, J. E. Felker, nor his attorney, Mr. Arnold, discussed that matter with him, but the evidence discloses that at that particular time the defendant, J. E. Felker, anticipated that his wife would agree to the sale and would join him in the execution of the necessary conveyances, and it was clearly an oversight on the part of the attorney, Mr. Ar-

nold, in not requiring the signature of the defendant, Grace Felker, to the contract, for which he is not subject to criticism. There isn't any doubt but that he thought at that time that the contract would be performed by the defendant, J. E. Felker, in the manner as provided therein, and it was the intention of the defendant, J. E. Felker, to perform and to convey or cause to be conveyed all of the land to the plaintiff in accordance with the terms of the contract. The plaintiff was so convinced of the sincerity of the defendant, J. E. Felker, that he paid an additional $10,000.00 at that time making a total payment of $20,000.00, and leaving a balance due under the terms of the contract of $80,000.00.

There is no doubt but that the plaintiff assumed that the various parties in whom the record title to the land was vested would execute conveyances. He had no knowledge of the power of attorney from W. B. Felker to J. E. Felker, but did know of the power of attorney from Mrs. Kate Morris to J. E. Felker and there is nothing to indicate that he did not expect all of the defendants to execute conveyances to any tracts of land of which the record title was vested in them but he relied upon J. E. Felker, regardless of the record condition of the title, and was not interested in the procedure that he would follow to furnish the title. It was agreed that the defendant, J. E. Felker, would remain in control of the farm as the agent of the plaintiff until the deeds were executed and delivered under the terms of the contract or the agency was terminated and that the plaintiff would reimburse him for all expenses incurred during such period. It was also agreed that J. E. Felker would hold and conduct an auction sale of the Hereford cattle and that the proceeds of the sale would be applied to the balance of the purchase price. The auction sale was held on June 12, 1950, and the net proceeds of the sale amounted to $53,121.41.

### 4

The parties by written stipulation specifically described the various tracts of land, and named the owners of each tract, as shown by the records in the office of the Recorder of Deeds for Benton County, Arkansas, on May 1, 1950, and covered by the contract.

The stipulation discloses that J. E. Felker owned approximately 400 acres; W. B. Felker owned approximately 1097 acres; Warren R. Felker owned approximately 69 acres; and Mrs. Kate Morris owned approximately 400 acres, making in all approximately 1966, but the land described in the contract would indicate approximately 1800 acres. However, there is no dispute between the parties as to the actual land involved, although it would be necessary to survey the various tracts to determine the exact amount of acres.

It is not necessary to set out in full the stipulation or legal description of the various tracts to which the various defendants held record title, and the above will suffice to show the condition of the record title on May 1, 1950.

On May 1, 1950, defendant J. E. Felker was the grantee of unrevoked general powers of attorney from defendants Kate Morris and W. B. Felker authorizing J. E. Felker to sell and convey lands owned by the said Mrs. Kate Morris and W. B. Felker and to make all contracts, deeds or other instruments necessary to do so.

### 5

Sometime after the first contract dated March 1, 1950, was executed the defendant, J. E. Felker, requested Warren R. Felker and wife, Florence Felker, Mrs. Kate Morris, and W. B. Felker, to sign individual deeds containing a description of the property, the record title of which was in their names. These parties signed individual deeds, which were dated April 25, 1951, but the testimony does not show when the deeds were signed, and the name of the grantee was not inserted in any one of the deeds until the date of the acknowledgement on June 24, 1950.

The cattle auction had been held at that time and J. E. Felker knew that the cattle had sold for several thousand dollars more than he thought they would bring at auction, and with full knowledge of the fact that the plaintiff had probably obtained a

bargain, he inserted or caused to be inserted his own name as the grantee in these deeds. This was done for his convenience and either for the purpose of enabling him to convey the land and obviate the necessity of the prior owners of the record title of joining in the conveyance, or to aid his wife, Mrs. Grace Felker, in the assertion of her claim for dower, because at that time she had definitely advised her husband that she would not relinquish her dower.

Title to the various tracts was examined by the present attorneys for the plaintiff, but at that time the attorneys did not know for whom they were examining the same, having been employed for that purpose by the real estate agent. They required certain defects to be corrected. Thereafter title to the Northwest Quarter of the Northeast Quarter, Section 13, Township 19 North, Range 29 West was quieted in W. B. Felker by decree of the Benton County Chancery Court on May 18, 1950, and as to another tract J. E. Felker gave a release deed to W. B. Felker and placed same of record to satisfy a mortgage. These things were done pursuant to the direction of the attorneys for the purpose of clearing title in the record holder thereof. The records did not indicate that J. E. Felker owned any interest in the land other than the 400 acres.

6

The defendant, Grace Felker, wife of J. E. Felker, married the latter in November, 1931, after having been employed by him as his secretary for a number of years. They have lived together as man and wife since that time.

She was advised of the negotiations and knew of the two contracts, but testified that she did not know that the contracts included the cattle. She did not find out that the cattle were part of the deal until the auction, which she attended. Thereafter she advised her husband, defendant J. E. Felker, that she would not sign the deed and relinquish her dower right in the land. She knew the plaintiff by sight and testified that she saw him at the auction sale on June 12, 1950, but did not at that time or any other time advise him that she would not relinquish her dower.

Defendant, Grace Felker, was not a party to and did not sign either the March 1 or May 1, 1950, contract, and was not guilty of any conduct which was intended or calculated to induce, or which did induce, the plaintiff to enter into the May 1, 1950, contract or which misled the plaintiff in any manner in any of the negotiations or transactions involved herein.

7

Neither the defendant, J. E. Felker, now 73 years of age, nor his wife, the defendant Grace Felker, now 62 years of age, have or had any children.

8

All of the lands involved herein are new acquisitions. As stated above there are approximately 1700 acres in the entire tract. Of this acreage, the defendant, J. E. Felker, held title in his own name to 400 acres. This 400 acres is included in the approximately 1100 acres that are rough, hilly and the principal value of which is the growing of timber, of which there is a considerable amount. The timber has not been cut or burned over since the land was acquired by J. E. Felker.

The fair market value of the lands covered by the May 1, 1950, contract, with permanent improvements thereon, is at this time $52,000.00.

The parties stipulated that the sale of the cattle netted $53,121.41; that the personal property covered by the contract was worth $8,878.59, making a total of $62,000.00; and that, thus, the contract price of the lands was $38,000.00. The defendant, J. E. Felker, testified that during the negotiations and at the time the two contracts were executed he figured that the cattle would not sell for more than $40,000.00 and that the lands were worth $52,000.00. In his own mind he arrived at the value of the lands by figuring 600 acres of farm and pasture land at $50.00 per acre and 1100 acres of hilly, rough land for timber and grazing purposes at $20.00 per acre.

There isn't any doubt but that the defendant, J. E. Felker, and in fact all of

the Felkers, including Mrs. Grace Felker, was very much surprised when the cattle sold for the net sum of $53,121.41, and it is apparent that all the parties considered that the sale price of the rough, hilly timber land was $20.00 per acre and the other lands was $50.00 per acre.

9

On July 24, 1950, the plaintiff tendered to the defendants, J. E. Felker and Warren R. Felker, the sum of $33,997.09, being $26,878.59 on the contract and $7,118.50 due J. E. Felker as agent for advances made, which tender was acknowledged by defendants, J. E. Felker and Warren R. Felker, as a tender of the remaining amount due under the contract and advances made, but that such defendants refused to accept such payment and refused to deliver the deeds to the property involved to the plaintiff, although plaintiff made demand upon the defendants, J. E. Felker and Warren R. Felker, to do so.

10

As of the date of the trial there was due under the contract the sum of $7,021.57 for operating expenses, calculated as the difference between $7,866.38 now due and $844.81 credit collected on fire loss, and the sum of $26,878.59, remainder due on the $100,000.00 contract purchase price, or a total of $33,900.16, of which amount tender was again made by the plaintiff to the defendant, J. E. Felker.

Roy Claybrook, son-in-law of the plaintiff has been on the farm operating the same since May, 1950, and although demand was made upon J. E. Felker and W. B. Felker for full possession of the farm and premises, W. B. Felker continued to reside in the house located thereon until his death on April 14, 1951.

J. E. Felker was duly appointed Executor of the Estate of W. B. Felker on May 4, 1951, and this action was revived against J. E. Felker, Executor, on May 8, 1951.

Discussion

The defendant, Grace Felker, refuses to relinquish and asks the court to protect her dower right in all of the lands herein involved. There being no children and the lands being new acquisitions her claim is under Sec. 61–206, Ark.Stats.1947, which provides, inter alia: "If a husband die, leaving a widow and no children, such widow shall be endowed in fee simple of one-half of the real estate of which such husband died seized, where said estate is a new acquisition and not an ancestral estate; * * *."

As to the 400 acres of land held in the name of J. E. Felker, there is no real dispute as to the validity of Mrs. Grace Felker's claim. Under Secs. 61–207 and 61–208 of Ark.Stats.1947 it is clear that her dower is not impaired by any conveyance in which she does not relinquish the same. The real dispute arises over the effect of her refusal to relinquish her dower rights in the remainder of the land, legal title to which was held in the names of W. B. Felker, Mrs. Kate Morris and Warren R. Felker, but equitable title to which was in her husband, J. E. Felker.

Plaintiff's first contention is that she is estopped. The court has found that she was not guilty of any conduct which was intended or calculated to induce, or which did induce, the plaintiff to enter into the May 1, 1950, contract, or which misled the plaintiff in any manner in any of the negotiations or transactions involved herein. Therefore, she is not estopped to assert any rights or interest in this land which the law gives her. See: Kistler v. Gingles, D.C.W.D. Ark., 88 F. Supp. 9, on question of estoppel, and for citation of Arkansas cases. Also, plaintiff is apparently contending that J. E. Felker is estopped to set up the alleged resulting trust, which is the basis of his asserted equitable title and that Mrs. Grace Felker has no standing to do so because she is not the beneficiary nor is she in privity with the beneficiary.

J. E. Felker is estopped to assert any greater interest in the property than he had at the time of the contract, but the facts do not reveal that he is doing so. The facts show that the plaintiff dealt with J. E. Felker as the owner of or at least the one with control of the title to this

property. It is extremely doubtful that at the time the contract was executed the plaintiff understood the exact status of the legal title to the various tracts, and while it does appear that he had knowledge of the power of attorney held by J. E. Felker from Mrs. Kate Morris, it is definite that he did not have knowledge of the power of attorney from W. B. Felker, who held the record title to the major portion of the land. The court believes that the plaintiff was relying upon J. E. Felker personally to convey or cause to be conveyed a good title to all of the lands, and gave no thought to the relationship of the owners or any claim that the wife of any Felker might have in the land. Also, it does not appear that at that time there was any bad faith on J. E. Felker's part, but the facts indicate that he had every reason to, and did, believe that his wife would relinquish her dower rights.

Mrs. Grace Felker is not barred from asserting a dower interest in the lands in which her husband held an equitable estate if the law of Arkansas is such as to sustain a claim of dower in an equitable estate transferred by the husband during his lifetime.

A resulting trust may arise in favor of one who furnishes the purchase money for land intended for his own use but title to which is taken in a third person. The facts here clearly show that it was the intention of all involved that the beneficial interest in these various tracts of land was to be in J. E. Felker rather than the record title holder. See: Stacy v. Stacy, 175 Ark. 763, 300 S.W. 437; Restatement of Trusts, Sec. 404.

Although the language of Sec. 61–206, Ark.Stats.1947 is "widow shall be endowed in fee simple of one-half of the real estate of which such husband died seized", the same requisites for dower are necessary under this section as under Sec. 61–201, which provides "third part of all the lands whereof her husband was seized, of an estate of inheritance, at any time during the marriage". McGuire v. Cook, 98 Ark. 118, 135 S.W. 840. Also, it should be noted that the language of Sec. 61–206 "of which such husband died seized" includes "lands sold in the lifetime of the husband, without her consent in legal form". Roetzel v. Beal, 196 Ark. 5, 116 S.W.2d 591, 595. Under both sections seizin is necessary. "Seizin is either in deed, or in law; seizin in deed, is actual possession; seizin in law, the right to immediate possession." Tate v. Jay, 31 Ark. 576, 579.

Plaintiff has earnestly argued that J. E. Felker was not seized of this property. As to this contention the court finds no merit. It is settled in Arkansas that the husband may be seized for purposes of the dower statutes in an equitable estate. Kirby v. Vantrece, 26 Ark. 368. As stated in Spaulding v. Haley, 101 Ark. 296, 301, 142 S.W. 172, 174: "We are also of the opinion that under the laws of this state a widow is entitled to dower in lands to which her husband had only an equitable title. The statute provides that the 'widow shall be endowed * * * of all the lands whereof her husband was seised of an estate of inheritance.' * * * This court has decided that an equitable estate is sufficient." Therefore, the court is of the opinion that since J. E. Felker has the beneficial or equitable estate and exercised absolute control over this property he is and has been "seized" for dower purposes.

The plaintiff contends that while Arkansas recognizes dower in equitable estates held by the husband at the time of his death, such is not the case when the equitable estate is transferred by him during his lifetime. As to this contention, it is the duty of this court to apply the law of Arkansas as it finds and understands it to be from the statutes enacted by the General Assembly and the decisions of the State Supreme Court. The last expression of the Arkansas Supreme Court called to the attention of or found by the court appears in Corcorren v. Sharum, 141 Ark. 572, 577, 217 S.W. 803, 804, wherein the court said:

"The effect of the holding in Langley v. Langley, supra [45 Ark. 392], was that the widow was not entitled to dower as against the grantee of the husband, and this holding is in accordance with *the general rule that, if the husband during his*

*lifetime disposes of any equitable estate he may have in the lands, the dower right of his wife therein will be defeated. * * * * (Italics added.)*

"A vendor's lien is treated in equity as a mortgage and enforced as such. * * * Under the statute, if Corcorren had died without having transferred his equitable interest in the land, his widow would have been entitled to dower in any surplus remaining . after discharging the vendor's lien. Having parted with his equitable interest prior to his death by conveying the land to Lizzie Burel and A. P. Hager, he has no beneficial interest in the land, and at his death his widow would not be entitled to dower therein."

While the above case involved the estate or interest of a vendee in land on which a vendor's lien existed, yet, the court declared that the general rule is that if the husband disposes of *any* equitable estate he may have in the land that the dower rights of the wife therein will be defeated. Regardless of whether that is the general rule in so far as a majority of other jurisdictions are concerned, it is a solemn announcement of the general rule in Arkansas, and this court must accept the statement as the best indication of what the present law in Arkansas is where a husband becomes bound by contract or otherwise and in accordance therewith conveys lands in which he owns the equitable estate or because of the contract a court divests him of the title.

The Court of Appeals for this Circuit in Standard Accident Ins. Co. v. Roberts, 8 Cir., 132 F.2d 794, 799, said: "However, even a dictum in a State decision should be followed by us unless there is positive decision to the contrary. See [City of] Texarkana v. Arkansas, Louisiana Gas Co., 306 U.S. 188, 199, 620, 59 S.Ct. 448, 83 L.Ed. 598. Also, note expressions in Supreme Court opinions to the effect that 'it is the duty of the former (federal courts) in every case to ascertain from all the available data what the state law is and apply it' (West v. American T[el.] & T[el.] Co., 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139, 132 A.L.R. 956) and that decisions of intermediate State courts are to be followed by federal courts as to State law 'unless it (federal court) is convinced by other persuasive· data that the highest court of the state would decide otherwise' ".

■ The defendant contends that J. E. Felker actually acquired legal title to all of the land prior to May 1, 1950, the date of the contract sued upon, but this contention is not substantiated by the facts. It is true that he has in his possession, and introduced in evidence at the trial, three separate unrecorded deeds executed by Warren R. Felker and wife, Florence Felker, W. B. Felker and Mrs. Kate Morris, and that the deeds each bear the date of April 25, 1950, but it should be borne in mind that at that time J. E. Felker was under obligation by the contract dated March 1, 1950, to convey or cause to be conveyed to the plaintiff the title to the land. Also, it was admitted at the trial that these three deeds when signed did not contain the name of the grantee and that the name of the grantee was subsequently inserted in each deed and the notary public executed the acknowledgment on June 24, 1950. This occurred 12 days after the date of the auction sale of the cattle and after J. E. Felker knew that the cattle had sold for a sum greatly in excess of what he thought they would sell for and after his wife, the defendant, Mrs. Grace Felker, had advised him that she would not relinquish her dower. Whether the defendant, J. E. Felker, inserted his own name as grantee in the deeds for the purpose of increasing the claim of his wife for dower or whether he did it for other reasons is immaterial. It is clear that had he followed what was evidently in contemplation of himself and the plaintiff, the plaintiff's name would have been inserted in the three deeds. Under these circumstances, the rule that one acquiring title pursuant to obligations of a contract to immediately convey to another does not acquire the beneficial seizin necessary for dower to attach applies. J. E. Felker made himself a mere conduit for the passage of the title to the plaintiff. Hicks v. Fletcher, 147 Ark. 14, 226 S.W. 524; and see, Hawkins v. Lamb, 210 Ark. 1, 194 S.W.2d 5.

The rule in Arkansas, that if the husband during his lifetime disposes of any equitable estate he may have in lands, his wife's dower rights in the land will be defeated, seems to be a just rule designed to prevent a husband who has executed a contract of sale from in effect escaping from the obligations of his contract by subsequently joining with his non-consenting and non-signing wife in her claim for dower in the land, notwithstanding the vendee contracted to purchase the land upon the faith of the title as reflected by the deed records. Therefore, the procedure adopted by the defendant, J. E. Felker, did not in any wise enure to the benefit of the defendant, Mrs. Grace Felker, and since the lands in which her husband owned the equitable title will be transferred during his lifetime by virtue of his contractual obligations, she is not entitled to dower therein.

There remains to be disposed of the effect of Sec. 61–226, Ark.Stats.1947, upon the dower rights of defendant, Mrs. Grace Felker, in the 400 acres of land owned outright by her husband, J. E. Felker. This section bars the inchoate right of dower in all cases where the husband has been barred of his title for seven years or more.

The wife's right of dower is not a vested right in property, and is not protected from legislative impairment or destruction by constitutional guaranties for the protection of property. It is determined by the law in force at the time of her husband's death, and during his lifetime may be modified or entirely cut off by statute. Skelly Oil Company v. Murphy, 180 Ark. 1023, 24 S.W.2d 314. Since it is a legislative matter, the question is one of statutory interpretation. No instance of an authoritative announcement by the Supreme Court of Arkansas on the precise point has been called to the attention of the court, so it must determine the matter in line with what it finds and believes to be the legislative intent. The plain language of the statute is that the inchoate right of dower of any married woman in real property is barred in all cases when or where the husband has been barred of his title in said property for seven years or more. Nothing is said about the right of the wife to avoid the effect of the statute by asserting her right in the meantime, and the only reasonable interpretation of the language used is that her dower right is barred after the lapse of seven years, regardless of any effort on her part to assert it before that time.

The Arkansas cases of Tatum v. Tatum, 174 Ark. 110, 295 S.W. 720, 53 A.L.R. 306, and B. H. & M. Oil Company v. Graves, 182 Ark. 659, 32 S.W.2d 630, which upheld the right of the wife, during the lifetime of her husband, to secure protective measures from the court to prevent the destruction of her dower interest, are not inconsistent with this conclusion, for she can have it protected here. If her husband, J. E. Felker, predeceases her during the seven year period it will become consummate, but, if not, she loses it at the end of that period.

The court has given careful consideration to the contentions of the defendants concerning this matter, but does not deem it necessary to discuss each in detail. Suffice it to say that the court finds them to be without merit, and has reached the conclusion set forth above as to the present status of the Arkansas law on this point.

Conclusions of Law

1

The court has jurisdiction of the parties and of the subject matter of this cause.

2

The contract of May 1, 1950, entered into by the plaintiff, B. H. Fletcher, and the defendant, J. E. Felker, is valid and binding on the parties thereto.

Plaintiff has performed all terms of the contract obligatory upon him and is entitled to have the contract specifically performed by the defendant, J. E. Felker.

3

On May 1, 1950, the defendant, J. E. Felker, was the sole owner of and held record title to approximately 400 acres of land in Benton County, Arkansas, described as follows:

Tract No. 11—East half of the Southeast Quarter, Section 14, and the North half of the Northeast Quarter of Section 23, all in Township 19 North, Range 29 West.

Tract No. 12—The E½ of the NE¼, Section 14 and the N½ of NW¼, Section 13, except the following: Begin 35 rods East of NW corner of Section 13, thence South 16 rods, East 3 rods, South 12 rods, East 13 rods, North 12 rods, East 5 rods, North 12 rods, West 1 rod, North 4 rods to North line of Section 13, thence West to the place of beginning, all in Twp. 19 North of Range 29 West.

Tract No. 13—The West half of the Northeast Quarter of Section 14, Township 19 North of Range 29 West.

The defendant, Grace Felker, wife of the defendant, J. E. Felker, was not a party to the contract of May 1, 1950; has not agreed to and has not relinquished her dower right in said property; is not estopped to assert her claim to dower therein; is entitled to have her dower right in the above described real property protected in the decree of the court; and the decree should provide that the title thereto of defendant, J. E. Felker, his heirs and assigns, shall be divested and vested in the plaintiff, B. H. Fletcher, his heirs and assigns, subject to the claim of dower of the defendant, Mrs. Grace Felker, becoming consummate.

4

On May 1, 1950, the defendant, J. E. Felker, was the owner of the beneficial or equitable estate in the remainder of the real property involved herein by virtue of a resulting trust, which arose when he paid the purchase price for the lands intended for his own use and took title in the names of his brothers and sister, it being the intention of all concerned that he be the beneficial owner.

The defendant, Mrs. Grace Felker, is not estopped to assert a claim to dower rights in these lands, but in as much as the decree will be to effect a transfer of the lands by the husband, defendant, J. E. Felker, during his lifetime, any dower rights which she would have had if her husband had died seized of said estate in the lands will be defeated by the transfer, and the decree specifically describing said lands should provide that the title thereto of J. E. Felker, his heirs and assigns, shall be divested and vested in the plaintiff, B. H. Fletcher, his heirs and assigns, free and clear of any claim to dower therein by the defendant, Mrs. Grace Felker.

5

The defendant, Mrs. Grace Felker, will be entitled to an undivided one-half interest in the real property described in Conclusion of Law No. 3, to which J. E. Felker held the record title in his own name, in the event her husband, defendant, J. E. Felker, predeceases her within 7 years from the date of the decree.

The value of the land in which the defendant, Grace Felker, has claim for dower has been found by the court to be $8,000.00. One-half of this sum is $4,000.00, and the balance of $33,900.16 due by the plaintiff to J. E. Felker under the terms of the contract, which sum includes the unpaid portion of the purchase price of the property and operating expenses, should be abated in the sum of $4,000.00, leaving the sum of $29,900.16 to be paid by the plaintiff to the defendant, J. E. Felker, on the date or immediately after the date of the decree. In the decree a lien should be retained on the land in which the defendant, Mrs. Grace Felker, has claim for dower, to secure the payment of the said $4,000.00, without interest except as set forth below, and the decree should further provide that in the event the defendant, J. E. Felker, dies within 7 years from the date thereof that the said lien should be null and void and of no effect; that in the event the defendant, Mrs. Grace Felker, should predecease the defendant, J. E. Felker, or in the event the defendant, J. E. Felker, is living at the expiration of 7 years from the date of the decree the said sum of $4,000.00 shall become due and payable at once to the said J. E. Felker or his estate, with interest thereon at the rate of 6% per annum from the date it shall become due in accordance with the terms of the decree.

The decree should further provide that the plaintiff or those claiming under or through him shall not cut or remove any growing timber or minerals from the land or any portion of the land in which the defendant, Mrs. Grace Felker, has claim for dower while said claim is inchoate, without the written consent of said defendant, Mrs. Grace Felker.

6

Upon the payment by the plaintiff of the sum of $29,900.16, the balance due less the $4,000.00 abatement, to the defendant, J. E. Felker, the said defendant, J. E. Felker, shall deliver title to and possession of all personal property covered by the contract of May 1, 1950, to the said plaintiff, B. H. Fletcher.

7

The decree should further provide that the plaintiff may obtain a certified copy of the same for record in the deed records of Benton County, Arkansas.

8

A decree in accordance with the above Conclusions should be entered and all costs adjudged against the defendant, J. E. Felker.